Robert Farris-Olsen
David K. W. Wilson, Jr.
MORRISON, SHERWOOD, WILSON
    & DEOLA PLLP
P.O. Box 557
Helena, MT  59624
(406) 442-3261
rfolsen@mswdlaw.com
kwilson@mswdlaw.com

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59101
(406) 839-9091
John@lawmontana.com

Vildan A. Teske
TESKE LAW PLLC
222 South Ninth Street, Suite 1600
Minneapolis, MN
(612) 767-0521
Teske@Teskelaw.com

*Pro hac vice application pending*

*Attorneys for Plaintiff*

**IN THE UNITED STATE DISTRCIT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| JOHN H. LINDSTROM, individually and on behalf of a nationwide class and Montana subclass of similarly situated individuals, | Cause No.  CV-23-137-BLG-SPW-TJC |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| POLARIS INC., POLARIS INDUSTRIES INC. and POLARIS SALES INC., | |
| Defendants. | |

Comes now, Plaintiff John H. Lindstrom, individually, and on behalf of a nationwide class of similarly situated individuals and for his complaint against Polaris Inc., Polaris Industries Inc. and Polaris Sales Inc. (collectively "Polaris", "Polaris Defendants" or "Defendants"), states and alleges as follows:

## PARTIES

1.      Plaintiff John H. Lindstrom is a citizen and resident of Fishtail, Stillwater County, Montana.

2.      Lindstrom purchased a new Polaris RZR 200, VIN L6KHCB183PS007460, on or about July 20, 2023, in Billings Montana.

3.      Polaris Inc. is a Delaware corporation which manufactures and sells Polaris RZR 200s nationwide, including in Montana.

4.      Polaris Industries Inc. is a Delaware corporation, with its principal place of business located at 2100 Highway 55, Medina, Minnesota and is a citizen of Minnesota and Delaware.

5.      Polaris Sales Inc. is a wholly-owned subsidiary of Polaris Inc. and has the same offices as Polaris Industries Inc. Polaris Sales Inc. is registered with the Montana Secretary of State and has a registered agent located in Missoula, Montana. Collectively, the defendants are referred to as "Polaris", "Polaris Defendants" or "Defendants."

2

## JURISDICTION AND VENUE

6.    Lindstrom brings claims under 15 U.S.C. § 2301, the Magnuson-Moss Warranty Act, which gives this Court jurisdiction by virtue of 28 U.S.C. § 1331. Jurisdiction is also appropriate under 28 U.S.C. § 1332(d) because Lindstrom is a citizen of Montana and Polaris is a citizen of Minnesota and the amount in controversy in the aggregate exceeds $5,000,000.

7.    The Court has supplemental jurisdiction of state law claims pursuant to 28 U.S.C. § 1367.

8.    This Court has jurisdiction over Polaris because Polaris does business in Montana, has a registered agent in Montana, Plaintiff purchased the vehicle at issue in Billings, Montana, and Plaintiff resides in Fishtail, Montana

9.    Venue is appropriate in this district under 28 U.S.C. § 1391 because Plaintiff purchased the vehicle at issue in Montana, giving rise to the claims asserted below.

## FACTS

10.    On or about July 20, 2023, Lindstrom purchased a 2023 RZR 200 from Basecamp Billings, in Billings, Montana.

11.    The RZR 200 is made and marketed as a "kid-friendly" vehicle:

## OFF-ROAD PERFORMANCE FOR THE NEXT GENERATION
Kid-friendly performance that grows with them and all the safety features parents need. For riders ages 10+ with adult supervision.



12.    Lindstrom paid $7,530.00 for the RZR 200. This consisted of $6,799.00 for the vehicle and $731.00 for setup.

13.    Lindstrom purchased the RZR 200 for his grandchildren to use because it is specifically designed and marketed for use by children.

14.    At all relevant times, Lindstrom has maintained ownership of the RZR 200.

15.    Polaris's advertising represents that "kids can confidently tackle adventures thanks to age-appropriate ergonomics, capable suspension and plenty of ground clearance to clear obstacles." And it has a "kid-friendly" 4-stroke engine.

16.    It also comes with safety and design features specifically tailored to kids, including the following:

    a.    Polaris Ride Command, which allows an adult to track the vehicle's location in real time using a mobile phone;

b.    A geofence, specified by an adult using a mobile phone, which automatically triggers a one mph crawl speed when the vehicle goes beyond the boundaries of the geofence;

c.    Helmet Aware technology that prevents the vehicle from starting unless the children are wearing helmets;

d.    Password protection that prevents the vehicle from starting unless a child enters the correct password set by an adult;

e.    Bluetooth-enabled speed limitation, which allows the supervising adult to alter the maximum speed of the vehicle using a mobile phone;

f.    Child-sized driver and passenger compartments;

g.    Child-sized and child-appropriate seatbelt restraints and roll-over cage;

h.    Child-sized and child-appropriate operator hand and foot controls; and

i.    A child-sized and child-appropriate steering wheel rather than the traditional ATV handlebar found on ATVs designed for adults.

17.    The purpose of all of the child-specific design, marketing and safety features is to encourage parents and grandparents to buy a RZR 200 for their children/grandchildren and to provide a vehicle that is safe for children to operate.

18.    Because it is designed and marketed for children 10 and up, it has a limited useful lifespan of only a few years. As children grow (physically and by age), they

outgrow the RZR 200. So, any limitation on use necessarily limits the lifespan and value of the RZR 200.

19.     On or about September 7, 2023, Lindstrom received an email from Polaris with the subject line "Important Stop Ride Notice Z-23-06." The email explained:

> Polaris Industries Inc. is issuing a Stop Ride notice to affected owners of some Model Year 2021-2024 RZR 200 vehicles because we have determined that vehicles may experience a steering rack failure during operation. A steering rack failure may result in a loss of vehicle steering control, posing a crash hazard and risk of serious injury. Our records show you have purchased an affected vehicle. Polaris has informed the Consumer Product Safety Commission about the issue.

> Our records indicate that you are the owner of a RZR with VIN L6KHCB183PS007460 affected by Safety Recall Z-23-06.

> Polaris is currently evaluating a repair for this concern. At the time of availability, Polaris will notify dealers and reply to you by mail (and email). This work will be performed by your dealer at no cost to you.

20.     It further advised Lindstrom: "DO NOT OPERATE YOUR VEHICLE until this safety recall has been completed." (emphasis in original.)

21.     This recall notice was sent to over 23,000 RZR 200 owners.

22.     Upon receiving this notice, Lindstrom instructed his grandchildren to stop using the RZR 200, which they have not used since.

23.     The defect injured Lindstrom because the vehicle cannot be used.

24.     Also, after receiving this recall notice, Lindstrom checked Polaris's customer recall site, but could not find the safety recall notice for his RZR 200.

25.     Lindstrom also called Polaris to determine what steps he should take to have the RZR 200 repaired. He reached out four times, and was told by Polaris employees that there was no fix for the problem.

26.     Employees at the dealership where he purchased the RZR 200 told him it may take six to twelve months for the fix to the problem with his vehicle.

27.     To date, there is still no fix to the problems with Lindstrom's RZR and other similar RZRs.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

29.     Plaintiff seeks to represent a class ("the Nationwide Class") defined as:

> All current and former owners of a Class Vehicle (as described herein) that was purchased in the United States that is subject to the Recall Notice (as defined herein).

30.     Plaintiff also respectively seeks to represent the following statewide class defined as follows:

> All current and former owners or lessees of a Class Vehicle (as described herein) that was purchased in the State of Montana that is subject to the Recall Notice (as defined herein) ("the Montana Class").

31.     A "Class Vehicle" is any RZR 200 vehicle that was subject to Polaris' Safety Recall Z-23-06.

32.    Excluded from both the Nationwide Class and the Montana Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court Staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Nationwide and Montana Class definitions, as appropriate, during the course of this litigation.

33.    The classes expressly disclaim any recovery in this action for personal injury resulting from the recall, without waiving or dismissing any such claims.

34.    This action has been brought and may properly be maintained on behalf of the Nationwide and Montana Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

35.    **Numerosity – F. R. Civ. P. 23(a)(1)**. The members of the Nationwide and Montana Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable.

36.    The precise number of class members is unknown, but may be ascertained from Polaris's books and records. Polaris stated that the total number of affected vehicles are 23,260 units globally. Nationwide and Montana Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

37.     **Commonality and predominance – F. R. Civ. P. 23(a)(2) and 23(b)(3).**
This action involves common questions of law and fact, which predominate over
any questions affecting individual Nationwide and Montana Class members,
including, without limitation:

 a.  Whether Polaris engaged in the conduct alleged herein;

 b.  Whether Polaris's alleged conduct violates applicable law;

 c.  Whether Polaris designed, advertised, marketed, distributed, leased,
sold or otherwise placed Class Vehicles into the stream of commerce in the
United States;

 d.  Whether Polaris breached its express warranties to the Nationwide
and Montana Class members with respect to the Class Vehicles;

 e.  Whether Polaris breached its implied warranties to the Nationwide
and Montana Class members with respect to the Class Vehicles;

 f.  Whether Nationwide and Montana Class members overpaid for their
Class Vehicles as a result of the defect alleged herein;

 g.  Whether Nationwide and Montana Class members are entitled to
damages, restitution, restitutionary disgorgement, equitable relief, statutory
damages, exemplary damages, and/or other relief; and

 h.  The amount and nature of relief to be awarded to Plaintiff and the
other Nationwide and Montana Class members.

38.    **Typicality – F. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the other Nationwide and Montana Class members' claims because Plaintiff and the Nationwide and Montana Class members purchased Class Vehicles that suffer from the same or similar steering rack defect. Neither Plaintiff nor the other Nationwide and Montana Class Members would have purchased the Class Vehicles, or, alternatively, would have paid less for the Class Vehicles, had they known of the steering rack defect. Plaintiff and the other Nationwide and Montana Class members suffered damages as a direct proximate result of the same wrongful practices in which Polaris engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Montana Class members.

39.    **Adequacy of Representation – F. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Nationwide and Montana Classes that he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation and consumer protection litigation, and Plaintiff and his counsel intend to prosecute this action vigorously. The Nationwide and Montana Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

10

40.    **Declaratory and Injunctive Relief – F. R. Civ. P. 23(b)(2)**. Polaris has

acted or refused to act on grounds generally applicable to Plaintiff and the other

Nationwide and Montana Class members, thereby making appropriate final

injunctive relief and declaratory relief, as described below, with respect to the

Nationwide and Montana Class members as a whole.

41.    **Superiority – F. R. Civ. P. 23(b)(3).** A class action is superior to any other

available means for the fair and efficient adjudication of this controversy, and no

unusual difficulties are likely to be encountered in the management of this class

action. The damages or other financial detriment suffered by Plaintiff and the other

Nationwide and Montana Class members are relatively small compared to the

burden and expense that would be required to individually litigate their claims

against Polaris, so it would be impracticable for the Nationwide and Montana Class

members to individually seek redress for Polaris's wrongful conduct. Even if the

Nationwide and Montana Class members could afford litigation, the court system

could not. Individualized litigation creates a potential for inconsistent or

contradictory judgments, and increases the delay and expense to all parties and the

court system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court.

**CLAIMS FOR RELIEF**

**COUNT 1**

**VIOLATION OF THE MAGNUSON-MOSS
WARRANTY ACT 15 U.S.C. §§ 2301, *et seq.*
Brought on Behalf of the Nationwide Class**

42.    Plaintiff realleges the preceding paragraphs as though set forth in full

hereunder.

43.    Plaintiff brings this count individually, and on behalf of the other members

of the Nationwide Class.

44.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(3).

45.    Polaris is a "supplier" and "warrantor" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

46.    The Class Vehicles are "consumer products" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

47.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is

damaged by the failure of a warrantor to comply with a written warranty.

48.    The limited warranty provides:

> Polaris Industries Inc., 2100 Highway 55, Medina, MN 55340
> (POLARIS) gives a SIX MONTH LIMITED WARRANTY on all
> components of your Polaris vehicle against defects in material or
> workmanship. . . . This warranty covers parts and labor charges for
> repairs or replacement of defective parts and begins on the date of
> purchase by the original retail purchaser. This warranty is transferable

to another owner during the warranty period through a Polaris dealer, or other qualified person, but any such transfer does not extend the terms of the warranty….

49.    Polaris's Limited Warrant is a written warranty within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied

warranty of merchantability is covered by 15 U.S.C. § 2301(7). To the extent the

warranty seeks to limit implied and other warranties provided by law, it is in

violation of 15 U.S.C. § 2308 (c).

50.    With respect to the Nationwide Class members' purchases of the Class

vehicles, the terms of Polaris' written warranty and implied warranty became part

of the basis of the bargain between Polaris and the Plaintiff and Nationwide Class

members.

51.    Polaris breached these warranties as described in more detail above. Without

limitation, the Class Vehicles have a steering rack defect, as described above.

52.    At the time of sale of each Class Vehicle, Polaris knew, should have known,

or was reckless in not knowing of the Class Vehicles' inability to perform as

warranted, but nonetheless failed to rectify the situation and/or disclose the

defective design. Under the circumstances, the remedies available under any

informal settlement procedure would be inadequate, and any requirement that

Plaintiff and the other Class members resort to an informal dispute resolution

procedure and/or afford Polaris a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

53.    The amount in controversy of Plaintiff's individual claims meet or exceed the sum of $25. The amount in controversy in this action exceeds the sum of $50,000.00, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

54.    As a direct and proximate result of Polaris's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiff and the other Class members have sustained damages in an amount to be determined at trial.

55.    Plaintiff, individually and on behalf of all the other Class members, seeks all damages permitted by law, including recission of the sale, loss of use, and/or diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT 2

### BREACH OF CONTRACT
### Brought on Behalf of the Nationwide Class

56.    Plaintiff realleges the preceding paragraphs as though set forth in full hereunder.

57.    Plaintiff brings this count individually, and on behalf of the other members of the Nationwide Class.

14

58.    Every purchase or lease of a Class Vehicle from an authorized dealer of Polaris constitutes a contract between the Polaris Defendants and the purchaser or lessee.

59.    Polaris materially breached these contracts by selling or leasing to Plaintiff and class members defective Class Vehicles, rendering the vehicles substantially less valuable than the vehicles that the Polaris Defendants advertised and promised to deliver. Accordingly, Plaintiff and the class members would not have purchased or leased the Class Vehicles at the prices they paid and therefore overpaid for their Class Vehicles and did not receive the benefit of their bargain.

60.    Polaris also breached their implied covenant of good faith and fair dealing under the laws of all 50 states and the District of Columbia. By delivering a vehicle that was not safe to operate, or saleable in its current condition, Polaris violated Plaintiff and the class members' fair and reasonable expectations under their respective contracts.

61.    As a direct and proximate result of Polaris's breach of contract and/or breach of implied convenant of good faith and fair dealing, Plaintiff and the other Class members have sustained damages in an amount to be determined at trial.

62.    Plaintiff, individually and on behalf of all the other Class members, seeks all damages permitted by law, including recission of the sale, loss of use, and/or diminution in value of their vehicles, in an amount to be proven at trial.

15

## COUNT 3

**VIOLATIONS OF MONTANA CONSUMER PROTECTION ACT**
**Mont. Code Ann. §§ 30-14-101 et seq.**
**Brought on Behalf of the Montana Class**

63.    The preceding paragraphs are realleged as though set forth in full hereunder.

64.    Plaintiff brings this claim individually and on behalf of the other members of the Montana Class.

65.    The Montana Consumer Protection Act, § 30-14-103, prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . ."

66.    By the Conduct described in detail above, and incorporated herein, Polaris engaged in unfair and/or deceptive acts or practices. The RZR is made for, and marketed to, young children, with several safety features purportedly intended to keep young riders safe. Plaintiff purchased the RZR 200 for recreational use and expected the vehicle he purchased would be free of defects.  He rightfully expected the vehicle would be safe for recreational use by his grandchildren.  Instead, he was sold a vehicle that cannot be used until it is repaired and until he can be assured of its safety.  It is unfair and deceptive for Polaris to sell Plaintiff and the members of the Class a vehicle that cannot be used safely and that requires repairs (which have not been determined by Polaris as of yet). Plaintiff and the other Class members justifiably acted or relied to their detriment upon Polaris's omissions of

fact concerning the above-described defect that results in the Class Vehicles having an unreasonable propensity to lose the ability to steer, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

67.    Had Polaris disclosed all material information regarding the defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so. Polaris's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

68.    In addition to being deceptive, the business practices of Polaris were unfair because Polaris sold Plaintiff and the other Class members Class Vehicles with a defect which made the vehicles essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.

69.    As a direct and proximate result of Polaris's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased the Class Vehicles would not have purchased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the steering rack defect been

disclosed. Plaintiff and the other Montana Class members also suffered diminished value of their vehicles. Furthermore, Plaintiff and the other Class members have suffered the loss of use of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Mont. Code Ann. § 30-14-133, MCA.

## COUNT 3

### UNJUST ENRICHMENT
### For Plaintiff and the National Class

70.    The preceding paragraphs are realleged as though set forth in full hereunder.

71.    Plaintiff brings this claim individually and on behalf of the other members of the National Class.

72.    Polaris has benefitted from selling and leasing at an unjust profit defective Class Vehicles that are not operable or saleable, and Plaintiff and other Class members have overpaid for these vehicles.

73.    Polaris has received and retained unjust benefits from Plaintiff and other members of the Class, and inequity has resulted.

74.    Polaris knowingly accepted the unjust benefits of its wrongful conduct.

75.    As a result of Polaris's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and other members of the Montana Class in an amount to be proved at trial.

## COUNT 4

**BREACH OF EXPRESS WARRANTY**
**Mont. Code Ann. § 30-2-313**
**Brought on Behalf of the Montana Class**

76.    The preceding paragraphs are realleged as though set forth in full hereunder.

77.    Plaintiff brings this claim individually and on behalf of the other members of the Montana Class.

78.    Polaris is and was at all relevant times a merchant with respect to the Class Vehicles.

79.    In its Limited Warranty, Polaris expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. Polaris provides the following language:

> Your Polaris XPEDITION, RZR, GENERAL or ATV comes with a six-month factory warranty with unlimited miles. Your Polaris RANGER comes with a one-year factory warranty with unlimited miles.
>
> This warranty covers components of your vehicle against defects in material or workmanship. It covers parts and labor charges for repair or replacement of defective parts and begins on the date of purchase by the original retail purchaser. The warranty is transferable to another owner during the warranty period through a Polaris Dealer, but any transfer will not extend the original length of the warranty.

80.    Polaris's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

19

81.    Polaris breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. Polaris has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

82.    The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Polaris has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

83.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

84.    Also, as alleged in more detail herein, at the time that Polaris warranted and sold the Class Vehicles it knew, or reasonably should have known, that the Class Vehicles did not conform to the warranty and were inherently defective. Plaintiff and the other Class members were therefore induced to purchase or lease the Polaris Vehicles under false pretenses.

85.    Moreover, much of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Polaris's improper conduct as alleged herein, and due to its failure and/or continued failure to provide

such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

86.    As a direct and proximate result of Polaris's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 5

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Mont. Code. Ann. § 30-2-314**
**For Plaintiff and the Montana Class**

87.    The preceding paragraphs are realleged as though set forth in full hereunder.

88.    Plaintiff brings this claim individually and on behalf of the other members of the Montana Class.

89.    Polaris was and is at all relevant times a merchant with respect to motor vehicles under Mont. Code. Ann. § 30-2-314.

90.    Pursuant to Mont. Code § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

91.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

Specifically, the Class Vehicles suffer from the steering rack defect which causes the Class Vehicles to have an unreasonable propensity to lose all steering.

92.    Polaris was provided notice of these issues and defects.

93.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Polaris's breach of the warranty of merchantability.

94.    As a direct and proximate result of Polaris's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 6

### NEGLIGENT MISREPRESENTATION
### For Plaintiff and the Montana Class

95.    The preceding paragraphs are realleged as though set forth in full hereunder.

96.    Plaintiff brings this claim individually and on behalf of the other members of the Montana Class.

97.    Polaris represented either directly, or through an omission of fact, that the Class Vehicles were free from any steering rack defects at the time that the Plaintiff and other Montana Class members purchased their Class Vehicles.

98.    Polaris knew, or should have known, that the Class Vehicles were subject to a steering rack defect, and therefore, had a duty to disclose the defect to the

Plaintiff and other Montana Class member in connection with the sale of the Class Vehicles.

99.    Polaris did not disclose the steering rack defect to Plaintiff and the other Motnana Class members in connection with the sale of the Class Vehicle.

100.    For the reasons set forth above, the steering rack defect comprises material information with respect to the sale of the Class Vehicles.

101.    In purchasing the Class Vehicles, Plaintiff and other Montana Class members reasonably relied on Polaris to disclose known material defects with respect to the Class Vehicles.

102.    Had the Plaintiff and other Montana Class members known of the steering rack defect, they would not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

103.    Through its omission regarding the steering rack defect in the Class Vehicles, Polaris intended to induce, and did induce, Plaintiff and other Montana Class members, into purchasing a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

104.    As a direct and proximate result of Polaris's omissions, Plaintiff and the other Montana Class members either overpaid for the Class Vehicles or would not

have purchased the Class Vehicles at all if the steering defect had been disclosed to them, and therefore, have incurred damages in an amount to be determined at trial.

**WHEREFORE** Plaintiff, individually and on behalf of the other members of the Nationwide Class and the Montana Class, respectfully requests that the Court enter judgment in their favor and against Defendants Polaris Industries, Inc. and Polaris Sales, Inc. as follows:

a.    Declaring that this action is a proper class action, certifying the Nationwide and Montana Class as requested herein, designating Plaintiff as Nationwide and Montana Class Representatives, and appointing Plaintiff's attorneys as Class Counsel;

b.    Enjoining Polaris from continuing the unfair and deceptive business practices alleged in this Complaint or from selling the subject vehicle until the defect is cured;

c.    Ordering Polaris to pay actual and statutory damages and restitution to Plaintiffs and the other Nationwide and Montana Class members, as allowable by law, including rescission of the contracts and return of purchase/lease payments, damages for loss of use, and/or damages for diminution of value;

d.    Ordering Polaris to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Polaris to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff and the Class members hereby demand a trial by jury on all issues so triable.

Dated this 15th day of November, 2023.

By: *John Heenan*_____
John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59101
(406) 839-9091
John@lawmontana.com
*Attorneys for Plaintiff*

Robert Farris-Olsen
David K. W. Wilson, Jr.
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
P.O. Box 557
Helena, MT  59624
(406) 442-3261 Phone
(406) 443-7294 Fax
rfolsen@mswdlaw.com
kwilson@mswdlaw.com

Vildan A. Teske
TESKE LAW PLLC
222 South Ninth Street
Suite 1600
Minneapolis, MN  55402
(612) 767-0521
Teske@Teskelaw.com

*Pro hac vice application pending*

**Attorneys for the Plaintiff and Plaintiff Class**