Robert Farris-Olsen
David K. W. Wilson, Jr.
MORRISON, SHERWOOD, WILSON
    & DEOLA PLLP
P.O. Box 557
Helena, MT  59624
(406) 442-3261
rfolsen@mswdlaw.com
kwilson@mswdlaw.com

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59101
(406) 839-9091
John@lawmontana.com

Vildan A. Teske
TESKE LAW PLLC
222 South Ninth Street, Suite 1600
Minneapolis, MN
(612) 767-0521
Teske@Teskelaw.com

*Pro hac vice application pending*

*Attorneys for Plaintiffs*

## IN THE UNITED STATE DISTRCIT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| JOHN H. LINDSTROM, KRIS DAIGLE, and REBECCA TAUTENHAHN, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>POLARIS INC., POLARIS INDUSTRIES INC. and POLARIS SALES INC.,<br><br>Defendants. | Cause No. 1:23-cv-00137-SPW-TJC<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Come now, Plaintiffs John Lindstrom, Kris Daigle and Rebecca Tautenhahn, individually and on behalf of a class (and subclasses) of similarly situated individuals and for their complaint against Polaris Inc., Polaris Industries Inc. and Polaris Sales Inc. (collectively "Polaris", "Polaris Defendants" or "Defendants"), state and allege as follows:

## PARTIES

1.     Plaintiff John H. Lindstrom is a citizen and resident of Fishtail, Stillwater County, Montana. Lindstrom purchased a new Polaris RZR 200, VIN L6KHCB183PS007460, on or about July 20, 2023, in Billings Montana.

2.     Plaintiff Kris Daigle is a citizen and resident of Deridder, Louisiana. Daigle purchased a new RZR 200 in 2023 in Louisiana. Daigle purchased the RZR 200 for his son. Daigle's RZR 200 has experienced steering column problems which required him to have the vehicle repaired at his own expense prior to Polaris's recall notice.

3.     Plaintiff Rebecca Tautenhahn is a resident of Garland, Texas. Tautenhahn purchased a new RZR 200, VIN L6KHCB180NS000477, in December 2021 in Dallas, Texas. Tautenhahn purchased the RZR 200 for her son. Tautenhahn's RZR 200 has experienced steering column problems which required her to have the vehicle repaired at her own expense prior to Polaris's recall notice. Tautenhahn

purchased the RZR 200 under a retail installment contract requiring her to make monthly payments towards the purchase.

4.      Polaris Inc. is a Delaware corporation which manufactures and sells Polaris RZR 200s nationwide, including in Montana.

5.      Polaris Industries Inc. is a Delaware corporation, with its principal place of business located at 2100 Highway 55, Medina, Minnesota and is a citizen of Minnesota and Delaware.

6.      Polaris Sales Inc. is a wholly-owned subsidiary of Polaris Inc. and has the same offices as Polaris Industries Inc. Polaris Sales Inc. is registered with the Montana Secretary of State and has a registered agent located in Missoula, Montana. Collectively, the defendants are referred to as "Polaris", "Polaris Defendants" or "Defendants."

## JURISDICTION AND VENUE

7.      Jurisdiction is appropriate under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one Class member is of diverse jurisdiction from one Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.      The Court has supplemental jurisdiction of state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Polaris because Polaris does business in Montana, has a registered agent in Montana, Plaintiff Lindstrom purchased the vehicle at issue in Billings, Montana, and Plaintiff resides in Fishtail, Montana.

10.    Venue is appropriate in this district under 28 U.S.C. § 1391 because Plaintiff purchased the vehicle at issue in Montana, giving rise to the claims asserted below.

<strong>FACTS</strong>

11.    Plaintiffs each purchased RZR 200 vehicles for use by their children and grandchildren.

12.    The RZR 200 is made and marketed as a "kid-friendly" vehicle:

**OFF-ROAD PERFORMANCE FOR THE NEXT GENERATION**
Kid-friendly performance that grows with them and all the safety features parents need. For riders ages 10+ with adult supervision.



13.     Plaintiffs purchased the RZR 200 for their children/grandchildren to use because it is specifically designed and marketed for use by children.

14.     At all relevant times, Plaintiffs have each maintained ownership of their purchased RZR 200s.

15.     Polaris's advertising represents that "kids can confidently tackle adventures thanks to age-appropriate ergonomics, capable suspension and plenty of ground clearance to clear obstacles." And it has a "kid-friendly" 4-stroke engine.

16.     It also comes with safety and design features specifically tailored to kids, including the following:

   a.     Polaris Ride Command, which allows an adult to track the vehicle's location in real time using a mobile phone;

   b.     A geofence, specified by an adult using a mobile phone, which automatically triggers a one mph crawl speed when the vehicle goes beyond the boundaries of the geofence;

   c.     Helmet Aware technology that prevents the vehicle from starting unless the children are wearing helmets;

   d.     Password protection that prevents the vehicle from starting unless a child enters the correct password set by an adult;

   e.     Bluetooth-enabled speed limitation, which allows the supervising adult to alter the maximum speed of the vehicle using a mobile phone;

f.      Child-sized driver and passenger compartments;

g.      Child-sized and child-appropriate seatbelt restraints and roll-over cage;

h.      Child-sized and child-appropriate operator hand and foot controls; and

i.      A child-sized and child-appropriate steering wheel rather than the

traditional ATV handlebar found on ATVs designed for adults.

17.    The purpose of all of the child-specific design, marketing and safety features is to encourage parents and grandparents to buy a RZR 200 for their children/ grandchildren and to provide a vehicle that is safe for children to operate.

18.    Because it is designed and marketed for children 10 and up, it has a limited useful lifespan of only a few years. As children grow (physically and by age), they outgrow the RZR 200. So, any limitation on use necessarily limits the useful lifespan and value of the RZR 200.

19.    On or about September 7, 2023, Plaintiff Lindstrom received an email from Polaris with the subject line "Important Stop Ride Notice Z-23-06" (hereafter "the Notice.") The Notice explained:

> Polaris Industries Inc. is issuing a Stop Ride notice to affected owners of some Model Year 2021-2024 RZR 200 vehicles because we have determined that vehicles may experience a steering rack failure during operation. A steering rack failure may result in a loss of vehicle steering control, posing a crash hazard and risk of serious injury. Our records show you have purchased an affected vehicle. Polaris has informed the Consumer Product Safety Commission about the issue.
>
> Our records indicate that you are the owner of a RZR with VIN L6KHCB183PS007460 affected by Safety Recall Z-23-06.

> Polaris is currently evaluating a repair for this concern. At the time of availability, Polaris will notify dealers and reply to you by mail (and email). This work will be performed by your dealer at no cost to you.

20.     It further advised Lindstrom: "DO NOT OPERATE YOUR VEHICLE until this safety recall has been completed." (emphasis in original.)

21.     In July 2023, Plaintiff Tautenhahn received the same Notice. By that point in time, Tautenhahn had already incurred out-of-pocket expenses associated with repairing the steering column on her RZR 200 vehicle. After receiving the Notice, Tautenhahn contacted Polaris and asked if it would reimburse her for the expense she incurred in fixing the defective steering column, and further asked if Polaris would take over the loan payments on the vehicle since she could not use or sell it under the Notice. Polaris refused to do either.

22.     This recall notice was sent to over 23,000 RZR 200 owners.

23.     Since receiving this notice, Plaintiffs' children/ grandchildren have not been able to use the RZR 200.

24.     The defect injured Plaintiffs because the vehicle cannot be used or sold.

25.     After receiving the Notice, Lindstrom checked Polaris's customer recall site, but could not find the safety recall notice for his RZR 200.

26.      Lindstrom also called Polaris to determine what steps he should take to have the RZR 200 repaired. He reached out four times, and was told by Polaris employees that there was no fix for the problem.

27.     Employees at the dealership where he purchased the RZR 200 told him it may take six to twelve months for Polaris to determine the fix to the problem with his vehicle.

28.     On November 15, 2023, Plaintiff Lindstrom filed this putative class action.

29.     Subsequent to the filing and service of this lawsuit, Polaris submitted a proposed recall plan to the Consumer Product Safety Commission ("CPSC"). Polaris's proposed remedy submitted to the CPSC was to replace the original rack and pinion steering system with a new steering rack system to remedy the defect in the subject RZR 200s, and to provide a 6 month limited extended warranty and a $250 voucher for Polaris parts, garments and accessories upon completion of the repair.

30.     The CPSC approved Polaris's proposed repair, but offered no comment on whether the 6 month extended warranty and $250 voucher was sufficient to make Class members whole for the loss of use and other injuries they have suffered.

31.     Polaris began notifying Plaintiffs and Class members of the available repair in January 2024. Polaris dealers have prioritized repairing their own inventory of RZR 200 vehicles over Class members, and Class members have been told it may take up to 6 more months to complete the repair.

32.    The Class has not reacted favorably to Polaris's proposed remedies beyond
the repair, with Class members criticizing both the limited warranty and the $250
merchandise voucher:



***

Jason Smith
December 13, 2023 · 🌐

Has anyone been able to get there machine fixed yet that already owns there's. It's real nice to see
polaris is taking care of there new customers before the one's that are losing out on warranty
coverage and service plans.

***



Katie Seibert
My problem with this is we bought in march of 23 and we have yet to have a dealer fix
ours they tell us they can't get the part yet. But are fixing their floor ones to get them
sold. The 6 month extension doesn't do shit for us the thing won't even be fixed yet at
this rate when the 6 months expire. We don't even want the damn thing anymore cause
all this!

***



**Jimmy Wallace**
Warranty is nearly worthless if you turn your own wrenches.
Dealer tried to extend my warranty but polaris said we were 2 weeks late???
I didn't push it because like I said... worthless

6d   Like   Reply   Share

***

All comments ▼



**Chris Mckay**
$250 in accessories is a joke.  4

4w   Like   Reply   Share

 **Eric Mckee**   Author
Chris Mckay 1000% true bogus and they won't budge we also have a extended
warranty that they pretty much say oh well to bad



4w   Like   Reply   Share

 **Max Lopez**
Chris Mckay I didn't even get that

4w   Like   Reply   Share

 **Eric Mckee**   Author
Max Lopez it was in the last letter sent

4w   Like   Reply   Share

 **Chris Mckay**
Max Lopez call polaris customer service with your vin# and they will tell you
what incentives you will recieve upon recall completion.

4w   Like   Reply   Share

**Eric Mckee**   Author
Chris Mckay everyone besides cali residents get the same bogus offer



4w   Like   Reply   Share

***



**Lucas Smith**
I agree we haven't been able to take it out for 3-4 months now it seems like. Should
give a like 1000-2000

***

10



**Lucas Smith**
**Eric Mckee** I got the letter in the mail yesterday said $250. Wtf am I going to buy with $250 at Polaris a tshirt and goggles!?!

\*\*\*

**Tony Rich**
They gave me $250 to spend on polaris accessories I told em to fuck off and that's BS
4w   Like   Reply   Share

**Eric Mckee**   Author
**Tony Rich** pretty much they don't even have anything of quality for it
4w   Like   Reply   Share

**Jason Smith**
I'm irritated that the dealers are fixing their inventory before ours.
4w   Like   Reply   Share

**Eric Mckee**   Author
**Jason Smith** that was brought today when I spoke to Polaris and she told that is Polaris policy
4w   Like   Reply   Share

**Jason Smith**
My dealer is even fixing there used units lol
4w   Like   Reply   Share

**Tyler Stettler**
**Jason Smith** welcome to corporate America. They are going to fix showroom machines well before yours. It's all about money and yours already made them money. Sadly It's not high on their priority list.
Also if you accept the $$$ you are releasing Polaris of any wrong doing in this whole process. I've been down this road way too many times.
4w   Like   Reply   Share

**Dallas Alvey**
It's complete bull crap
4w   Like   Reply   Share

**Paul Young**
This company can kiss my ass.
I've spent over $150k in Polaris products.
Local dealer in south Florida had no idea what a 200 even was and has never heard of the recall.

33.    Polaris, in response to the negative feedback, has apparently increased the voucher to $500 to Class members who call to complain, and has further apparently offered an additional $800-$1,200 in monetary compensation for California residents who call to complain:



3w   Like   Reply   Share   Edited

**Rob Kostopolus**
Josh- I bought a new unit 2 months ago and got it the day before Christmas. They sent me a $250 voucher in my email. I called them and told them that I saw people who got $500. They sent me another $250 with out argument.
PM me if you have questions and I'll give you the info.

\*\*\*



**David Cobler**
3d · 🌐                                                                                                    •••

Compensation on the stop ride for Ca owners

Just for a call back and they offered $800 cash back plus the $250 voucher and a 6 month warranty extension once the recall is completed .  Some people were asking just thought I'd throw it out there .  I think you might get a little more if you tell them you are making payments month on the machine .

8 comments

\*\*\*



34.     On December 19, 2023, Base Camp employee Jake Michaelis called

Plaintiff Lindstrom, stating "Polaris told me to call you regarding scheduling a

repair." Michaelis informed Lindstrom that the parts were not in yet. Lindstrom

asked Michaelis whether the repair was limited to the steering knuckle or if there

were additional parts that must be replaced. Michaelis replied that he didn't know because he had not seen the parts or the instructions for the repair. Lindstrom asked "Is Polaris going to extend my warranty?" Michaelis replied that he did not know. Lindstrom informed Michaelis that he had commenced a class action against Polaris as a class representative, explained that there were certain rules that governed his obligations as a class representative, and that given these, he needed to consult with his attorneys about what he should do respecting the repair. Michaelis said he understood and that Lindstrom should just let him know when Lindstrom wanted to schedule the repair. At no point did Lindstrom ever state that he didn't want the machine repaired. Rather, consistent with his fiduciary obligations to the Class and his concerns regarding Polaris's conduct with regard to repair, he was insuring that he was not being singled out by Polaris in order to moot his claim,  that the remedy was being made available to all fellow Class members and that by having their machines repaired, no class members would be releasing, waiving, forfeiting, or otherwise compromising their claims for other damages or injuries, which concerns were borne out by the "Cash Settlement Release" that Polaris demands class members execute before Polaris will repair their machine

35.    Polaris's recall program, and its timing, is a reaction to this class action and, as such, Plaintiffs have already secured injunctive relief on behalf of Class

13

members. However, Polaris's recall program is deficient in numerous respects. Polaris's offer of additional compensation and vouchers to Class members who complain is demonstrative of the fact that Polaris knows its $250 voucher is an inadequate remedy.

36.     The RZR 200 is a vehicle which is useable by children between the ages of 10 and 14 (60 months). The retail price of this toy is $6,799. The monthly value of the RZR 200 is $113.31 ($6,799/60 months). At minimum, and assuming speedy repair which has not been the experience of Class members, Plaintiffs and Class members were deprived of the use of their RZR 200s for at least 4 months, which equates to $453.24. Polaris's offered $250 merchandise voucher does not adequately compensate Class members for the fair value of their loss of use. Four months is the *least* amount of time class members will be deprived of use of the vehicle.  More likely, the repairs will not be completed for several months, leading to six to nine months of loss of use for most class members.

37.     Plaintiff Lindstrom, like many Class members, purchased his subject RZR 200 at a dealer remote from his residence. Polaris's recall offer does not compensate Class members for the time or mileage necessitated to haul their RZR 200 vehicles back to the dealership for the repair, or to return the vehicle to their residences upon completion of the repair.

14

38.     Plaintiffs Daigle and Tautenhahn, like many Class members, incurred out-of-pocket repair costs related to the defective steering rack prior to the September 2023 Notice. Polaris's recall offer does not compensate Class members for out-of-pocket repair costs related to the defective steering rack incurred prior to the September 2023 Notice.

## CLASS ALLEGATIONS

39.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

40.     Plaintiffs seek to represent a class ("the Nationwide Class") defined as:

> All current and former owners of a Class Vehicle (as described herein) that was purchased in the United States that is subject to the Recall Notice (as defined herein).

41.     Plaintiffs seek to represent a subclass ("the Non-California Subclass") of all Nationwide Class members other than California residents who are being offered less compensation than California Class members.

42.     Plaintiffs also respectively seeks to represent the following statewide subclasses defined as follows:

> a.      All current and former owners or lessees of a Class Vehicle (as described herein) that was purchased in the State of Montana that is subject to the Recall Notice (as defined herein) ("the Montana Class").

b.      All current and former owners or lessees of a Class Vehicle (as described herein) that was purchased in the State of Louisiana that is subject to the Recall Notice (as defined herein) ("the Louisiana Class").

c.      All current and former owners or lessees of a Class Vehicle (as described herein) that was purchased in the State of Texas that is subject to the Recall Notice (as defined herein) ("the Texas Class").

43.    A "Class Vehicle" is any RZR 200 vehicle that was subject to Polaris' Safety Recall Z-23-06.

44.    Excluded from the Nationwide Class, the Non-California Subclass and the Statewide Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court Staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

45.    The class members expressly exclude any claim or recovery in this action for personal injury resulting from the recall, without waiving or dismissing any such claims.

46.    This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

47.    **Numerosity – F. R. Civ. P. 23(a)(1)**. The members of the Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable.

48.    The precise number of class members is unknown, but may be ascertained from Polaris's books and records. Polaris stated that the total number of affected vehicles are 23,260 units globally. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

49.    **Commonality and predominance – F. R. Civ. P. 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.    Whether Polaris engaged in the conduct alleged herein;

b.    Whether Polaris's alleged conduct violates applicable law;

c.    Whether Polaris designed, advertised, marketed, distributed, leased, sold or otherwise placed Class Vehicles into the stream of commerce in the United States;

d.    Whether Polaris breached its express warranties to Class members with respect to the Class Vehicles;

e.    Whether Polaris breached its implied warranties to Class members with respect to the Class Vehicles;

17

f.      Whether Class members overpaid for their Class Vehicles as a result of the defect alleged herein;

g.      Whether Polaris was unjustly enriched at the expense of the Class Members as a result of the defect alleged herein;

h.      Whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

i.      The amount and nature of relief to be awarded to Class Members and the other Class members.

50.    **Typicality – F. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the Class members purchased Class Vehicles that suffer from the same or similar steering rack defect and received the same or substantially similar Notice. Neither Plaintiffs nor the other Nationwide or Subclass Members would have purchased the Class Vehicles, or, alternatively, would have paid less for the Class Vehicles, had they known of the steering rack defect. Plaintiffs and the other Class members suffered damages as a direct and proximate result of the same wrongful practices in which Polaris engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

51.     **Adequacy of Representation – F. R. Civ. P. 23(a)(4)**. Plaintiffs are

adequate Class representatives because their interests do not conflict with the

interests of the other members of the Classes and Subclasses they seek to represent,

Plaintiffs have retained counsel competent and experienced in complex class action

litigation and consumer protection litigation, and Plaintiffs and their counsel intend

to prosecute this action vigorously. The Classes' and Subclasses' interests will be

fairly and adequately protected by Plaintiffs and their counsel.

52.     **Declaratory and Injunctive Relief – F. R. Civ. P. 23(b)(2)**. Polaris has

acted or refused to act on grounds generally applicable to Plaintiff and the other

Class members, thereby making appropriate final injunctive relief and declaratory

relief, as described below, with respect to the Class members as a whole.

53.     **Superiority – F. R. Civ. P. 23(b)(3).** A class action is superior to any other

available means for the fair and efficient adjudication of this controversy, and no

unusual difficulties are likely to be encountered in the management of this class

action. The damages or other financial detriment suffered by Plaintiffs and the

other Class members are relatively small compared to the burden and expense that

would be required to individually litigate their claims against Polaris, so it would

be impracticable for the Class members to individually seek redress for Polaris's

wrongful conduct. Even if the Nationwide and Subclass members could afford

litigation, the court system could not. Individualized litigation creates a potential

for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT 1

### BREACH OF CONTRACT

54.    Plaintiffs reallege the preceding paragraphs as though set forth in full hereunder.

55.    Plaintiffs bring this count individually, and on behalf of the other Class members.

56.    Every purchase or lease of a Class Vehicle from an authorized dealer of Polaris constitutes a contract between the Polaris Defendants and the purchaser or lessee.

57.    Polaris materially breached these contracts by selling or leasing to Plaintiffs and Class members (directly or indirectly) defective Class Vehicles, rendering the vehicles substantially less valuable than the vehicles that the Polaris Defendants advertised and promised to deliver. Accordingly, Plaintiffs and the Class members would not have purchased or leased the Class Vehicles at the prices they paid and

therefore overpaid for their Class Vehicles and did not receive the benefit of their bargain.

58.     Polaris also breached their implied covenant of good faith and fair dealing under the laws of all 50 states and the District of Columbia. By delivering a vehicle that was not safe to operate, or saleable in its current condition, Polaris violated Plaintiffs' and the class members' fair and reasonable expectations under their respective contracts.

59.     As a direct and proximate result of Polaris's breach of contract and/or breach of implied convenant of good faith and fair dealing, Plaintiff and the other Class members have sustained damages in an amount to be determined at trial.

60.     Polaris, by its actions and conduct, knows that Class members are entitled to at least $1,200 in loss of use/consequential damages, as reflected by the settlement amounts offered to California Class members who have complained about the inadequacy of its $250 voucher offer.

61.     Plaintiff, individually and on behalf of all the other Class members, seeks all damages permitted by law, including recission of the sale, loss of use, and/or diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT 2

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

62.     Plaintiffs reallege the preceding paragraphs as though set forth in full hereunder.

63.     Plaintiffs bring this count individually, and on behalf of the other members of the Nationwide Class and statewide Subclasses.

64.     The Uniform Commercial Code, as adopted in every state, provides for an implied warranty of merchantability in the sale of goods and for remedies associated with a breach of the warranty, including loss of use and other incidental and consequential damages.

65.     Any attempt by Polaris to disclaim or limit the implied warranty of merchantability fails because the purported disclaimer is not conspicuous.

66.     The subject Vehicles were not merchantable products due to the defects defined above.

67.     As a direct and proximate result of Polaris's breach of the implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

68.     Plaintiffs, individually and on behalf of all the other Class members, seek all damages permitted by law, including recission of the sale, loss of use, and/or diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT 3

### UNJUST ENRICHMENT

69.    The preceding paragraphs are realleged as though set forth in full hereunder.

70.    Plaintiffs bring this claim individually and on behalf of the other Class members.

71.    Polaris has benefitted from selling and leasing at an unjust profit defective Class Vehicles that are not operable or saleable, and Plaintiffs and other Class members have overpaid for these vehicles.

72.    Polaris has received and retained unjust benefits from Plaintiffs and other members of the Class, and inequity has resulted.

73.    Polaris knowingly accepted the unjust benefits of its wrongful conduct.

74.    Polaris, by its actions and conduct, knows that Class members are entitled to at least $1,200 in loss of use/consequential damages, as reflected by the settlement amounts Polaris offered to Class members in California who have complained about the inadequacy of its $250 voucher offer.

75.    As a result of Polaris's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members in an amount to be proved at trial.

## COUNT 4

### BREACH OF EXPRESS WARRANTY

76.    The preceding paragraphs are realleged as though set forth in full hereunder.

77.    Plaintiffs bring this claim individually and on behalf of the other Class members.

78.    Polaris is and was at all relevant times a merchant with respect to the Class Vehicles.

79.    In its Limited Warranty, which defendants drafted and applied to all Class members, Polaris expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. Polaris provides the following language:

> Your Polaris XPEDITION, RZR, GENERAL or ATV comes with a six-month factory warranty with unlimited miles. Your Polaris RANGER comes with a one-year factory warranty with unlimited miles.
>
> This warranty covers components of your vehicle against defects in material or workmanship. It covers parts and labor charges for repair or replacement of defective parts and begins on the date of purchase by the original retail purchaser. The warranty is transferable to another owner during the warranty period through a Polaris Dealer, but any transfer will not extend the original length of the warranty.

80.    Polaris's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

81.    Polaris breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. Polaris has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects in a timely fashion.

82.    The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Polaris has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

83.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

84.    Also, as alleged in more detail herein, at the time that Polaris warranted and sold the Class Vehicles it reasonably should have known that the Class Vehicles did not conform to the warranty and were inherently defective. Plaintiff and the other Class members were therefore induced to purchase or lease the Polaris Vehicles under false pretenses.

85.    Moreover, much of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Polaris's improper

conduct as alleged herein, and due to its failure and/or continued failure to provide

such limited remedy within a reasonable time, and any limitation on Plaintiffs' and

the other Class members' remedies would be insufficient to make them whole.

86.    As a direct and proximate result of Polaris's breach of its express warranty,

Plaintiffs and the other Class members have been damaged in an amount to be

determined at trial.

## COUNT 5

## NEGLIGENT MISREPRESENTATION

87.    The preceding paragraphs are realleged as though set forth in full hereunder.

88.    Plaintiffs bring this claim individually and on behalf of the other Class

members.

89.    Polaris represented either directly, or through an omission of fact, that the

Class Vehicles were free from any steering rack defects at the time that the

Plaintiff and other Montana Class members purchased their Class Vehicles.

90.    Polaris should have known that the Class Vehicles were subject to a steering

rack defect, and therefore, had a duty to disclose the defect to the Plaintiffs and

other Class members in connection with the sale of the Class Vehicles.

91.    Polaris did not disclose the steering rack defect to Plaintiffs and the other

Class members in connection with the sale of the Class Vehicle.

92.    For the reasons set forth above, the steering rack defect comprises material information with respect to the sale of the Class Vehicles.

93.    In purchasing the Class Vehicles, Plaintiffs and other Class members reasonably relied on Polaris to disclose known material defects with respect to the Class Vehicles.

94.    Had the Plaintiffs and other Class members known of the steering rack defect, they would not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

95.    Through its omission regarding the steering rack defect in the Class Vehicles, Polaris intended to induce, and did induce, Plaintiffs and other Class members, into purchasing a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

96.    As a direct and proximate result of Polaris's omissions, Plaintiffs and the other Class members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the steering defect had been disclosed to them, and therefore, have incurred damages in an amount to be determined at trial.

## <u>COUNT 6</u>

## **VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES**

97.    The preceding paragraphs are realleged as though set forth in full hereunder.

98.    Plaintiff Lindstrom brings this claim individually and on behalf of the other members of the Montana Class.

99.    Plaintiff Daigle brings this claim individually and on behalf of the other members of the Louisiana Class.

100.   Plaintiff Tautenhahn brings this claim individually and on behalf of the other members of the Texas Class.

101.   The Montana Consumer Protection Act, § 30-14-103, prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . ."

102.   The Louisiana Consumer Protection Act, La. Rev. Stat. § 51:1405, prohibits "deceptive acts or practices in the conduct of any trade or commerce."

103.   The Texas Consumer Protection Act, Tex. Bus. & Com. Code § 17.45 *et seq.*, prohibits "false, misleading or deceptive acts or practices in the conduct of any trade or commerce" including "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience or capacity of the consumer to a grossly unfair degree."

104.   By the conduct described in detail above, and incorporated herein, Polaris engaged in unfair and/or deceptive acts or practices under the Montana, Louisiana and Texas Consumer Protection Acts. The RZR is made for, and marketed to, young children, with several safety features purportedly intended to keep young

riders safe. Plaintiffs purchased the RZR 200 for recreational use and expected the

vehicle would be free of defects.  Plaintiffs rightfully expected the vehicle would

be safe for recreational use by their children/grandchildren.  Instead, they were

sold a vehicle that cannot be used until it is repaired.  It is unfair and deceptive for

Polaris to sell Plaintiff and the members of the Class a vehicle that cannot be used

safely and that requires repairs. Plaintiff and the other Class members justifiably

acted or relied to their detriment upon Polaris's omissions of fact concerning the

above-described defect that results in the Class Vehicles having an unreasonable

propensity to lose the ability to steer, as evidenced by Plaintiffs' and the other

Class members' purchases of Class Vehicles.

105.   Had Polaris disclosed all material information regarding the defect to

Plaintiffs and the other Class members, Plaintiffs and the other Class members

would not have purchased or leased Class Vehicles or would have paid less to do

so. Polaris's omissions have deceived Plaintiffs, and those same business practices

have deceived or are likely to deceive members of the consuming public and the

Class.

106.   In addition to being deceptive, the business practices of Polaris were unfair

because Polaris sold Plaintiffs and the other Class members Class Vehicles with a

defect which made the vehicles essentially unusable for the purposes for which

they were sold. The injuries to Plaintiff and the other Class members are

substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members.

107.   As articulated above, Polaris's recall program for the defective RZR 200 is unfair and arbitrary. Class members who complain get compensated more than those who don't, and Class members who reside in California (and complain) get more than Class members outside California.

108.   As a direct and proximate result of Polaris's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased the Class Vehicles would not have purchased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the steering rack defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and other Class members have suffered out-of-pocket costs of repair related to the defective product prior to the recall. Plaintiffs and the other Class members have suffered the loss of use of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, statutory damages, attorneys' fees and costs, and all other relief allowed under the Montana, Louisiana and Texas Consumer Protection Acts.

**WHEREFORE** Plaintiffs, individually and on behalf of the other members of the Nationwide Class and the subclasses, respectfully request that the Court

enter judgment in their favor and against Defendants Polaris Industries, Inc. and

Polaris Sales, Inc. as follows:

a.      Declaring that this action is a proper class action, certifying the

Nationwide and Subclasses as requested herein, designating Plaintiffs as

Nationwide and Subclass Representatives for their respective states, and

appointing Plaintiff's attorneys as Class Counsel;

b.      Enjoining Polaris from continuing the unfair and deceptive business

practices alleged in this Complaint or from selling the subject vehicle until

the defect is cured;

c.      Ordering Polaris to pay damages and restitution to Plaintiffs and the

other Class members, as allowable by law, including rescission of the

contracts and return of purchase/lease payments, damages for out-of-pocket

costs of repair, damages for loss of use, and/or damages for diminution of

value;

d.      Ordering Polaris to pay both pre- and post-judgment interest on any

amounts awarded;

e.      Ordering Polaris to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs and the Class members hereby demand a trial by jury on all issues so triable.

Dated this 5th day of February, 2024.

By:   */s/ John Heenan*                         .
John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59101
(406) 839-9091
john@lawmontana.com

Robert Farris-Olsen
David K. W. Wilson, Jr.
MORRISON, SHERWOOD, WILSON &
DEOLA PLLP
P.O. Box 557
Helena, MT  59624
(406) 442-3261 Phone
(406) 443-7294 Fax
rfolsen@mswdlaw.com
kwilson@mswdlaw.com

Vildan A. Teske
TESKE LAW PLLC
222 South Ninth Street
Suite 1600
Minneapolis, MN  55402
(612) 767-0521
Teske@Teskelaw.com
*Pro hac vice application pending*

***Attorneys for the Plaintiffs and
Plaintiff Classes***