IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOHN H. LINDSTROM, KRIS DAIGLE, and REBECCA TAUTENHAHN, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>POLARIS INC., POLARIS INDUSTRIES INC. and POLARIS SALES INC.,<br><br>Defendants. | CV 23-137-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiffs John H. Lindstrom, Kris Daigle, and Rebecca Tautenhahn (collectively "Plaintiffs") bring this putative class action against Defendants Polaris Inc., Polaris Industries Inc., and Polaris Sales Inc. (collectively "Polaris"), alleging various state law claims including breach of contract, negligent misrepresentation, and violations of state consumer protection statutes. (Doc. 13.)

Presently before the Court is Polaris's Motion To Dismiss Plaintiffs' First Amended Complaint. (Doc. 16.) The motion is fully briefed and ripe for the Court's review. (*See* Docs. 17, 18, 19.) For the following reasons, the Court recommends Polaris's motion be GRANTED in part and DENIED in part.

/ / /

1

## I.     BACKGROUND

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all material allegations in the complaint as true.  *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  In ruling on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court may similarly consider "uncontroverted allegations in the complaint." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, at *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996)).  Therefore, for purposes of the instant motion, the Court accepts as true the following uncontroverted facts from Plaintiffs' First Amended Class Action Complaint ("FAC").  (Doc. 13.)  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Lindstrom, Daigle, and Tautenhahn are citizens of Montana, Louisiana, and Texas, respectively.  (Doc. 13 at 2.)  Plaintiffs each purchased new Polaris RZR 200 vehicles in their home states, for use by their children and grandchildren.  (*Id.* at 2, 4.)  Plaintiffs purchased the RZR 200 because it is marketed as a kid-friendly model.  (*Id.* at 4–5.)

In July 2023 and September 2023, Tautenhahn and Lindstrom, respectively, received "Stop Ride" notices from Polaris, informing them that the RZR 200

/ / /

2

vehicles may experience a steering rack failure during operation.[1]  (*Id.* at 6–7.)
Polaris sent these notices to greater than 23,000 RZR 200 owners.  (*Id.* at 7.)
Polaris subsequently submitted a proposed recall plan to the Consumer Product
Safety Commission ("CPSC"), whereby Polaris proposed to (1) replace the original
rack and pinion steering system with a new system, (2) provide a six-month limited
extended warranty, and (3) upon completion of the repair, provide a $250 voucher
for Polaris parts, garments, and accessories.  (*Id.* at 8.)  Plaintiffs allege that Polaris
increased the voucher to $500 for customers who called to complain, and has
offered an additional $800 to $1,200 for California residents who do so.  (*Id.* at
11.)

Plaintiffs note that RZR 200 vehicles are usable by children in a limited age-
based timeframe—from ages 10 to 14 years—and because repairs will not be
completed for several months, they allege the recall has caused a diminution in the
value of each customer's vehicle due to ongoing loss of use.  (*Id.* at 14.)  Plaintiffs
further allege that much of the damages cannot be resolved through repairs because
of Polaris's failure to provide those repairs within a reasonable time, and because
of the incidental and consequential damages Plaintiffs have already suffered "due
to Polaris's improper conduct."  (*Id.* at 25–26.)

/ / /

---

[1] The FAC does not state whether or when Daigle received such notice.

3

Based on the foregoing, Plaintiffs plead causes of action for breach of contract (Count 1), breach of implied warranty of merchantability (Count 2), unjust enrichment (Count 3), breach of express warranty (Count 4), negligent misrepresentation (Count 5), and violations of state consumer protection statutes (Count 6). Plaintiffs assert that this Court has subject matter jurisdiction over their claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (Doc. 13 at 3.)

Polaris argues that Plaintiffs' FAC should be dismissed in its entirety under the doctrine of prudential mootness. (Doc. 17 at 11.) Alternatively, Polaris asserts that the claims brought by Daigle and Tautenhahn must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (*Id.*) Finally, Polaris asserts that several of Plaintiffs' causes of action should be dismissed on the grounds that they fail to state a claim upon which relief can be granted. (*Id.* at 12.)

## II.   DISCUSSION

### A.   Dismissal of Daigle's and Tautenhahn's Claims for Lack of Personal Jurisdiction

Polaris argues that "[t]he claims of Plaintiffs Daigle and Tautenhahn fail because there is no personal jurisdiction over Polaris as to these claims." (Doc. 17 at 18.) In response, Plaintiffs argue that the Court has specific jurisdiction over Polaris because Polaris has sufficient minimum contacts in Montana, and U.S. Supreme Court precedent does not limit federal courts' exercise of personal

jurisdiction over the claims of out-of-state plaintiffs in putative class actions. (Doc. 18 at 17–20.)  In reply, Polaris contends that named plaintiffs in putative class actions must satisfy personal jurisdiction requirements like any other individual plaintiffs, and that Daigle and Tautenhahn have failed to do so here. (Doc. 19 at 3.)  The Court agrees.

Where subject matter jurisdiction is based on diversity, "a federal court applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  Therefore, to exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977).

Montana's rule conferring long-arm jurisdiction is found at Rule 4(b)(1) of the Montana Rules of Civil Procedure, and provides as follows:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts.  Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;

5

(C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;

(D) contracting to insure any person, property, or risk located within Montana at the time of contracting;

(E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;

(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

(G) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1). The Montana Supreme Court has described the first sentence of Rule 4(b)(1) as establishing the requirements for general jurisdiction, with the remainder establishing the requirements for specific jurisdiction. *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998)).

General personal jurisdiction is premised on a defendant's relationship to the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 443 P.3d 407, 412 (Mont. 2019), *aff'd*, 592 U.S. 351 (2021). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (emphasis in original). In order to establish general jurisdiction over foreign corporations, their affiliations with the state must be "so 'continuous and systematic' as to render them essentially at home in the forum state." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). A corporate defendant

6

is generally "at home" at its place of incorporation and its principal place of business.  *Id.*  In exceptional cases, however, a corporation may also be at home where its activities in another forum "may be so substantial and of such a nature as to render the corporation at home in that State."  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

Specific personal jurisdiction, on the other hand, is premised on both the defendant's relationship to the forum *and* the cause of action.  *Ford Motor Co.*, 443 P.3d at 412.  Put another way, specific jurisdiction is more limited, and requires the controversy be directly related to the defendant's contacts with the forum.  *Bristol-Myers*, 582 U.S. at 262.

If specific jurisdiction is found, then a determination of whether specific jurisdiction is proportional with the defendant's due process rights under federal law must be made.  *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983)); *see Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 255 P.3d 143, 149 (Mont. 2011).

## 1. General Jurisdiction

Polaris is not subject to general personal jurisdiction in Montana.  The three Polaris Defendants are apparently Delaware corporations with their respective principal places of business located in other states.  (Docs. 13 at 3; 17 at 20.) Additionally, Plaintiffs have not established that Polaris's operations are so

7

substantial and continuous that it is essentially at home in Montana.  Plaintiffs only

assert that "there can be no doubt that Polaris has extensive ties to Montana," but

only supports this by pointing out the existence of Polaris's "authorized

dealerships."  (Doc. 18 at 17–18.)  Accordingly, it has not been shown that the

Polaris Defendants are at home in Montana.

### 2.    Specific Jurisdiction

#### a.    Whether the Long-Arm Statute Confers Specific Jurisdiction Over Daigle's and Tautenhahn's Claims Against Polaris

Rule 4(b)(1) provides several other avenues whereby Montana courts can

assert personal jurisdiction over a plaintiff's specific claims against the defendant.

There is no provision of the statute, however, that covers the claims brought by

Daigle and Tautenhahn.  Not one of their causes of action "aris[es] from . . . the

transaction of any business within Montana; . . . the commission of any act

resulting in accrual within Montana of a tort action; . . . entering into a contract for

services to be rendered or for materials to be furnished in Montana by such

person"; or any other subdivision of the long-arm statute.  *See* Mont. R. Civ. P

4(b)(1).

In contrast, based on the facts alleged in the FAC, each cause of action

brought by Lindstrom likely constitutes, at least on its face, a "claim for relief

arising from the doing personally, or through an employee or agent, of . . . the

transaction of any business within Montana." Mont. R. Civ. P. 4(b)(1)(A). In

addition to the allegations that Polaris does business in Montana and has a

registered agent located in Missoula, Montana, Lindstrom alleges that he

purchased his RZR 200 in Billings, Montana. (Doc. 13 at 2–3.) Neither the

parallel allegations made by Daigle and Tautenhahn—who purchased their RZR

200s in their respective home states—nor any other facts giving rise to their causes

of action, have anything to do with Montana.

### b. Whether the Exercise of Specific Jurisdiction Comports with Due Process

As stated above, if jurisdiction exists under the Rule 4(b)(1), the Montana

Supreme Court then determines whether the exercise of jurisdiction comports with

due process. But because personal jurisdiction for Daigle's and Tautenhahn's

claims is not found under the statute, "further analysis under the second part of the

test is unnecessary." *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17

(2015). Nevertheless, Plaintiffs argue that "Montana's long-arm statute extends

personal jurisdiction to the broadest reach that the Due Process Clause of the

federal Constitution permits." (Doc. 18 at 16.) Even if that proposition is true,

however, it clear that Montana could not, consistent with due process, exercise

specific jurisdiction over Daigle's and Tautenhahn's claims.

A federal district court may constitutionally exercise specific personal

jurisdiction over a particular claim brought against a defendant when (1) the

defendant "purposely avails itself of the privilege of conducting activities within the forum State," (2) the plaintiff's claim "arise[s] out of or relate[s] to the defendant's contacts with the forum," and (3) the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (citations and internal quotation marks omitted).

At a minimum, Daigle's and Tautenhahn's claims do not satisfy the second requirement since they do not arise out of or relate to Polaris's contacts with Montana. The Supreme Court's decision in *Bristol-Myers* is instructive on this issue. In that case, a group of plaintiffs consisting of several dozen California residents and several hundred plaintiffs residing outside California filed complaints in California state court against a large pharmaceutical company, alleging that the prescription drug Plavix had damaged their health. 582 U.S. at 258–59. While the defendant sold Plavix in California and generated hundreds of millions of dollars in revenue from sales of Plavix in the state, the defendant "did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." *Id.* at 259. Further, in contrast to the California plaintiffs, the out-of-state plaintiffs "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by

Plavix in California." *Id.* at 264.  Nevertheless, the California Supreme Court

upheld the lower court's determination that California courts had specific

jurisdiction over the out-of-state plaintiffs' claims, given the defendant's extensive

contacts with California and the similarity of the out-of-state plaintiffs' claims with

the California residents' claims. *Id.* at 260.

The U.S. Supreme Court reversed.  Although it was uncontested that

California courts could assert specific jurisdiction over the resident plaintiffs'

claims, the Court made clear that "[t]he mere fact that other plaintiffs were

prescribed, obtained, and ingested Plavix in California—and allegedly sustained

the same injuries as did the nonresidents—does not allow the State to assert

specific jurisdiction over the nonresidents' claims." *Id.* at 264–65.  "What is

needed—and what is missing here," the Court concluded, "is a connection between

the forum and the specific claims at issue." *Id.* at 265.  Thus, the Court held that

California courts could not exercise specific jurisdiction over the out-of-state

plaintiffs' claims that arose in their respective home states. *Id.* at 268.

The circumstances presented by this case are similar to those in *Bristol-Myers*.  The fact that one Plaintiff purchased a RZR 200 in Montana and allegedly

sustained damages in Montana does not permit the exercise of jurisdiction over

claims having no relationship to the state.  There is no apparent connection

between the state of Montana and the claims of Plaintiffs Daigle and Tautenhahn,

and consistent with *Bristol-Myers*, Montana courts may not exercise specific jurisdiction over their claims.

Plaintiffs also cite to a more recent case from the Supreme Court which affirmed the constitutionality of Montana courts exercising specific personal jurisdiction over claims arising from a product purchased in another state. In *Ford Motor Co.*, a Montana resident was driving her Ford Explorer near her Montana home when the tread separated from the rear tire. 592 U.S. at 356. The Explorer went off the road and the driver was killed in the crash. The driver's estate sued Ford in Montana state court, and Ford moved to dismiss the case for lack of personal jurisdiction because it had neither designed, manufactured, nor sold the Explorer in Montana. The state district court denied Ford's motion, and its ruling was upheld by the Montana Supreme Court. *Id.* at 356–57.

The U.S. Supreme Court affirmed, holding that Ford was subject to personal jurisdiction in Montana. *Id.* at 357–58. Ford conceded that it had purposely availed itself of the privilege of conducting activities in Montana by "actively seek[ing] to serve the market for automobiles and related products" in the state. *Id.* at 361. This concession, the Court noted, was no surprise, given Ford's extensive sales and marketing activities in the state. *Id.* at 365. Ford argued, however, that these activities in Montana were not what gave rise to the claims at issue. Ford asserted that, although the accident occurred in Montana, specific jurisdiction was

12

limited to the states where Ford designed, manufactured, or sold the Explorer in question. *Id.* at 361. The Court disagreed. In fact, the Court characterized the situation where "a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident," as a "paradigm example[ ]of how specific jurisdiction works." *Id.* at 365–66.

The Court took particular care to note the disjunctive nature of the requirement that the claim must "arise out of *or relate to*" the defendant's contacts in the forum state. *Id.* at 362. While the phrase "arise out of" refers to causation between the defendant's in-state contacts and the plaintiff's claim, the phrase "relate to" could be satisfied by "another activity or occurrence that takes place in the State." *Id.* at 362 (citations and internal quotation marks omitted). Thus, because the resident-plaintiff alleged a defective Explorer caused the crash and resulting harm, and Ford had "advertised, sold, and serviced" Explorers in Montana for many years, there was "a strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Id.* at 365.

In this case, however, no such relationship exists between Polaris, Montana, and Daigle's and Tautenhahn's claims. Based on the facts as alleged in the FAC, and similar to the facts in *Ford Motor Co.*, Polaris has likely purposely availed itself of the privilege of conducting activities in Montana. Polaris is registered

13

with the Montana Secretary of State, has a registered agent in the state, and more importantly, conducts business in Montana including the sale of RZR 200s.  (Doc. 13 at 3.)  Also similar to the facts in *Ford Motor Co.*—and *Bristol-Myers*—Daigle and Tautenhahn bought their RZR 200s outside the forum state and brought suit here nonetheless.  In contrast to *Ford Motor Co.*, however—and similar to the circumstances in *Bristol-Myers*—their products did not malfunction in Montana, nor did any other activity or occurrence giving rise to their claims take place in the state.  Not only do their claims not "arise out of" Polaris's contacts in Montana, but the claims do not "relate to" those contacts whatsoever.

Plaintiffs attempt to dismiss the foregoing authority by asserting that federal courts have wider latitude to assert specific personal jurisdiction than state courts. In support, Plaintiffs cite to, and quote selectively from, *Livnat v. Palestinian Authority*, 851 F.3d 45 (D.C. Cir. 2017); *Getz v. Boeing Co.*, 654 F.3d 852 (9th Cir. 2011); and *ISI International, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir. 2001).  But in each of these cases, the courts were analyzing personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Rule 4(k)(2) provides:

/ / /

/ / /

/ / /

14

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2); *see also Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).  Here, Plaintiffs' claims do not arise under federal law, and each of the Polaris Defendants is subject to the jurisdiction in the courts of the states where it is incorporated and where it has its principal place of business.  Therefore, Rule 4(k)(2) does not apply.

In a fourth case cited by Plaintiffs, the court—as quoted by Plaintiffs—stated that "due process requires only that [a defendant] have sufficient minimum contacts with the United States as a whole to support personal jurisdiction." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 731 (7th Cir. 2013). Plaintiffs omit the final part of the sentence, however, where the court made clear the above only applies when "Congress has provided for nationwide service of process." *Id.*  The court was evaluating personal jurisdiction under Rule 4(k)(1)(C), which provides: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."  Fed. R. Civ. P. 4(k)(1)(C).  Here, no such federal statute applies.

/ / /

15

In a fifth case cited by Plaintiffs, a panel of the First Circuit held that Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure governs only the service of a summons, and did not limit a federal court's jurisdiction in an FLSA collection action after the summons was properly served. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93 (1st Cir. 2022).[2]  The court made clear, however, that its interpretation of Rule 4(k)(1)(A) applied exclusively to actions where the basis for subject matter jurisdiction was a federal question, which is not the case here.

Plaintiffs also quote *Sloan v. GM, LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018), arguing that "the due process right does not obtain here in the same manner because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government." *Id.* at 858–59. (*See* Doc. 18 at 19.)  The court clarified, however, that this approach to personal jurisdiction applied "where a federal court presides over litigation involving a federal question" and made clear its decision did "not address whether and how *Bristol-Myers* would apply if jurisdiction arose exclusively on the basis of diversity." *Sloan*, 287 F. Supp. at 859, 859 n.2.  But in a later order, the same court—"[r]ecognizing the growing weight of authority"—held that "*Bristol-Myers*

---

[2] Rule 4(k)(1)(A) states: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."

applies to federal courts sitting in diversity." *Sloan v. Gen. Motors LLC*, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019).  Thus, the court concluded that the exercise of personal jurisdiction over the claims of out-of-state plaintiffs was improper in the absence of an independent relationship between those claims and the forum state.  *Id.*

As a final line of argument, Plaintiffs assert that *Bristol-Myers* does not apply to class actions.  The Court need not delve into this question too deeply. Polaris does not assert a Rule 12(b)(2) defense against unnamed putative class members—it asserts it against two of the three named plaintiffs.  As stated unequivocally in a case Plaintiffs cite in their brief: "When determining whether there is personal jurisdiction over the defendant with respect to claims asserted by the named plaintiffs in a putative class action, the only claims to be assessed by the court are those of the class representatives." *Nelson v. Forest River, Inc.*, 2023 WL 2610769, at *7 (D. Mont. Mar. 23, 2023) (citation and internal quotation marks omitted); *see also Moser v. Benefytt, Inc.*, 8 F.4th 872, 877–78 (9th Cir. 2021) (stating the same).  This distinction is noted in the other cases cited by Plaintiffs. *See Corker v. Costco Wholesale Corp.*, 2023 WL 1965907, at *2 (W.D. Wash. Feb. 13, 2023) ("L & K and Kihnke are arguing that the Court lacks jurisdiction to hear the claims of *putative class members* who reside outside the forum . . . .") (emphasis added); *Lacy v. Comcast Cable Commc'ns, LLC*, 2020 WL 1469621, at

*1 (W.D. Wash. Mar. 26, 2020) ("For cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim [are] assessed only with respect to the named plaintiffs.") (quoting *Mussat v. IQVIA, Inc.*, 2020 WL 1161166, at *2 (7th Cir. Mar. 11, 2020)).

Moreover, although the Ninth Circuit has not addressed the issue, district courts in this circuit have found that the requirements for personal jurisdiction outlined in *Bristol-Myers* apply to the claims of named class members. *See, e.g.*, *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1011–12 (S.D. Cal. 2020) (collecting cases, and finding the "overwhelming majority of federal courts . . . in this district and across the country, have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions").

Therefore, to the extent Plaintiffs assert that the limitations of personal jurisdiction do not apply to their claims because they are seeking class certification, they are mistaken. As the class representatives, Plaintiffs must establish personal jurisdiction over their individual claims within the due process constraints of the Fourteenth Amendment. Daigle and Tautenhahn have failed to do so. Thus, the Court recommends that Polaris's motion to dismiss Daigle's and Tautenhahn's claims be GRANTED.

/ / /

/ / /

18

**B.     Dismissal for Prudential Mootness**

Polaris argues the Court should apply the doctrine of prudential mootness and dismiss this case in its entirety because the recall being overseen by the CPSC will remove the defect upon which Plaintiffs' claims are based. (Doc. 17 at 25.) Polaris points out that Daigle and Tautenhahn had their recall repairs performed, while Lindstrom refused the recall repair. (*Id.* at 29 n.9.) In response, Plaintiffs argue that the prudential mootness doctrine does not apply because they have alleged claims outside the scope of the CPSC recall and seek more than just equitable relief. (Doc. 18 at 22–23.) In reply, Polaris argues that prudential mootness applies to claims for both legal and equitable relief, and that Plaintiffs' claims outside the scope of the recall are barred by Polaris's written limited warranty. (Doc. 19 at 6–7.) The Court agrees with Plaintiffs, and concludes this action should not be dismissed on grounds of prudential mootness.

"The doctrine of prudential mootness permits a court to dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief." *Deutsche Bank Nat'l Trust Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014) (quoting *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)) (internal quotation marks omitted). Relevant to the case at hand, "prudential mootness may provide an appropriate basis for dismissal where a plaintiff seeks an equitable remedy for a

defective product, and that remedy will be provided" by a federal agency-supervised recall. *Sater v. Chrysler Grp. LLC*, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014). But courts "are not required to dismiss a live controversy as moot merely because it may become moot in the near future." *Hunt*, 560 F.3d at 1142. Rather, "[t]he party raising a mootness challenge . . . carries the heavy burden of showing that the court can grant no effective relief." *In re Macbook Keyboard Litig.*, 2019 WL 6465285, at *7 (N.D. Cal. Dec. 2, 2019) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)) (internal quotation marks omitted).

In *Sater*, for example, the district court declined to apply the prudential mootness doctrine despite an ongoing recall overseen by the National Highway Traffic Safety Administration ("NHTSA"). The plaintiff filed a putative class action against Chrysler, alleging several theories of liability arising out of defective tie rod ball studs on Dodge Ram trucks. 2014 WL 11412674 at *1. Chrysler moved to dismiss the complaint on the grounds that the court lacked subject matter jurisdiction based on prudential mootness. *Id.* at *2. Chrysler pointed out the nationwide recall under the supervision of the NHTSA, whereby Chrysler would test and replace the tie rods or reimburse owners for out-of-pocket fixes of the defective parts. *Id.* The plaintiff countered by arguing that the recall was not proceeding as smoothly as Chrysler represented, so the recall did not moot the

20

case, and also pointed out that his claims of excessive tire wear, loss of use, and diminution of resale value were additional injuries beyond the defective tire rods. *Id.*

The district court denied Chrysler's motion to dismiss.  Although the recall would eventually remedy the plaintiff's defective tie rods, the court noted that he "seeks more than new tie rods."  *Id.* at *5.  The court explained:

> [T]he class in this case is suing on theories related to deceptive business practices, lost use of the Class Vehicles caused by the defect, and diminished resale value due not to a defective part but negative publicity about the Class Vehicles.  To be sure, ordering Chrysler to replace the tie rods would duplicate the NHTSA-supervised recall, but holding it accountable for the other alleged injuries affords relief the recall does not provide.  Dismissing this case as prudentially moot would likely leave the owners of Class Vehicles "without complete relief."

*Id.* (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012)).

The Court finds the district court's reasoning in *Sater* to be persuasive. Polaris's CPSC-supervised recall will replace the RZR 200's defective steering system, grant owners a six-month extended warranty, and provide a $250 voucher for purchasing other Polaris products.  (Doc. 13 at 8.)  Similar to the claims brought by the plaintiff in *Sater*, however, this action seeks to hold Polaris accountable for other alleged injuries for which the recall would not provide relief,

/ / /

including damages for loss of use, deceptive business practices, and other unreimbursed costs.

Polaris also briefly alludes to the fact that Lindstrom declined to have the recall repair performed.  (Doc. 17 at 29–30.)  In a footnote, Polaris cites to *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019), where the district court noted that the complaint did not state whether the plaintiff had availed himself of the recall remedy, and to the extent he had not done so, "he cannot thereby manufacture standing."  *Id.* at *6.  But the court addressed this issue in the context of whether their allegation of "being subjected to potential risk of injury" by an insufficient recall remedy constituted an actual or imminent injury for purposes of standing under Article III of the U.S. Constitution.  *Id.* at *5.  This is not the argument Polaris raises.  (*See* Doc. 17 at 21.)  Polaris cites to no other authority in support of its assertion that Lindstrom's failure to schedule a repair means this action should be dismissed as prudentially moot, and without more, the Court is unconvinced that such a decision is called for at this stage of the proceedings.

Finally, tucked into Polaris's arguments concerning prudential mootness, Polaris argues that the written limited warranty precludes Plaintiffs from recovering loss-of-use damages or any other consequential or special damages. (*Id.* at 27.)  Polaris dedicates only three sentences to this point in its opening brief,

and two sentences in its reply brief.  (*See id.*; Doc. 19 at 7.)  Polaris does not cite to any cases; nor articulate how the warranty provision applies to each type of damages Plaintiffs seek; nor expound on how the statute it cites, Mont. Code Ann. § 30-2-719(3), covers the warranty provision; nor make clear whether its position is that the warranty provision is dispositive as to prudential mootness or any other grounds for dismissal.  Again, without more, this point does little to advance the Court's analysis of the pertinent issues.

Polaris has not met its heavy burden of demonstrating that the Court can award Plaintiffs no effective relief.  Accordingly, the Court declines to exercise its discretion to dismiss this live controversy as prudentially moot.  Therefore, the Court recommends that Polaris's motion to dismiss Lindstrom's claims on these grounds be DENIED.

### C.    Dismissal for Failure To State a Claim

Polaris argues that even if the Court does not dismiss Plaintiffs' claims on the grounds argued above, several of Plaintiffs' claims fail on other grounds and should be dismissed pursuant to Rule 12(b)(6).  (Doc. 17 at 30.)

Rule 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted.  "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d

23

995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most

favorable to the nonmoving party.  *See, e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Such assertions do nothing more than state a legal conclusion, even if the conclusion is cast in the form of a factual allegation.  *Id.*

### 1.    Failure To State a Claim for Breach of Contract

Polaris argues that that Lindstrom's breach of contract claim is based on a contract to which Polaris is not a party.  (Doc. 17 at 30–31.)  In response, Plaintiffs contend that Polaris provides the bill of sale contract to dealers, who then act as Polaris's authorized or apparent agent.  (Doc. 18 at 26.)  Plaintiffs further argue that the existence of the written limited warranty between Lindstrom and Polaris is sufficient evidence of the existence of a contract to survive this motion to dismiss.  (*Id.* at 27.)  In reply, Polaris argues that the only contract between Polaris and Lindstrom was the written limited warranty, and points out that Lindstrom alleged breach of contract and breach of express warranty as separate causes of action, where the former should be dismissed.  (Doc. 19 at 9–10.)

/ / /

/ / /

In its motion, Polaris does not provide argument as to which state's contract law should apply.  Because Lindstrom purchased his RZR 200 in Montana, it appears Montana law would apply at least to his claim.[3]  In Montana, "[t]he essential elements of a breach of contract claim are: (1) a valid and enforceable contract; (2) breach of an express or implied contract duty or obligation; and (3) resulting contract damages." *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 859 (Mont. 2022).  To establish the first element, the plaintiff must show: "(1) identifiable parties capable of contracting; (2) a lawful object (including lawful underlying terms and conditions); (3) the communicated mutual assent of the parties to the same contract terms and conditions; and (4) sufficient reciprocal consideration." *Hanson v. Town of Fort Peck*, 538 P.3d 404, 419 (Mont. 2023).

The Court agrees that Plaintiffs have not alleged sufficient facts in support of a breach of contract claim to survive this Rule 12(b)(6) motion to dismiss.  Although Plaintiffs in their response brief attempt to reframe their breach of contract claims as referring to the written limited warranties as the contracts at

/ / /

---

[3] In actions brought under CAFA, a federal court follows the choice-of-law rules of the state in which it sits. *Woodard v. Boeing Emps. Credit Union*, 2023 WL 4847126, at *2 (W.D. Wash. July 28, 2023).  Montana's choice-of-law rules provide that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Mont. Code Ann. § 28-3-102.  Here, by all indications, this is Montana.

issue (*see* Doc. 18 at 24), this is not how Count 1 is alleged in the FAC.[4]  There, Plaintiffs allege Polaris breached the contract formed by operation of purchasing the RZR 200.  (Doc. 13 at 20.)  To state a claim for breach of contract, then, Lindstrom must plead facts showing the existence of a valid and enforceable contract—in other words, that he and Polaris mutually assented to the contract terms and that sufficient reciprocal consideration was exchanged between them. Lindstrom alleges in the FAC, however, that he purchased his RZR 200 not from Polaris but from an authorized dealer—an entity identified in Plaintiffs' briefs as "The Basecamp" (or simply, "Basecamp").  (*See id.*; Doc. 18 at 10.)

In attempting to connect the dots between Basecamp, Polaris, and the elements of a breach of contract claim, Plaintiffs allege under Count 1 that "[e]very purchase or lease of a Class Vehicle from an authorized dealer of Polaris constitutes a contract between the Polaris Defendants and the purchaser or lessee." (Doc. 13 at 20.)  This statement may be cast in the form of a factual allegation, but it does nothing more than state a legal conclusion.  For the purposes of this motion to dismiss, therefore, this particular assertion is not entitled to an assumption of truth.

/ / /

---

[4] If Plaintiffs' breach of contract claim is limited to Polaris's written warranty, Plaintiffs do not explain why their breach of contract claim in Count 1 is not simply duplicative of their breach of express warranty claim in Count 4.

In their response brief, Plaintiffs identify Basecamp in conclusory fashion as Polaris's "authorized or apparent agent."  (Doc. 18 at 26.)  Under Montana statute, agency is either actual or ostensible.  Mont. Code Ann. § 28-10-103(1).  Actual agency occurs "when the agent is really employed by the principal."  *Id.* Ostensible agency, on the other hand, requires that "the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal."  *Id.* Thus, it must be the principal—not the alleged agent—whose act or omission causes the third person to believe that agency exists.  *Fitterer Sales Mont., Inc. v. Mullin*, 358 P.3d 885, 889 (Mont. 2015).

Here, except for this sole conclusory agency allegation, Plaintiffs do not otherwise articulate any facts in the FAC suggesting that Basecamp was employed by Polaris, or that Polaris intentionally or by want of ordinary care caused Lindstrom to believe Basecamp was employed by Polaris.

Thus, Lindstrom has not alleged sufficient facts to establish that his purchase of the RZR 200 constituted the formation of a contract with Polaris.  Even accepting the allegations of the FAC as true, and construing those allegations in the light most favorable to the nonmoving party, Lindstrom fails to state a claim for breach of contract under Count 1.  Accordingly, Polaris has shown it is entitled to dismissal of Lindstrom's claim in Count 1.

A court may grant a motion to dismiss with or without leave to amend.  The Ninth Circuit has made clear, however, that "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).  Since Plaintiffs may be able to plead additional facts to state a claim for breach of contract, dismissal in this instance should be with leave to amend.

Therefore, the Court recommends that Polaris's motion to dismiss Count 1 be GRANTED, without prejudice and with leave to amend.

### 2.    Failure To State a Claim for Unjust Enrichment

Polaris argues that Lindstrom's unjust enrichment claim is displaced by the written limited warranty.  (Doc. 17 at 32.)  In response, Plaintiffs assert their prerogative to plead claims in the alternative.  (Doc. 18 at 27.)  In reply, Polaris contends that Lindstrom would need to sufficiently allege that the contract between them—the written limited warranty—is invalid or unenforceable to bring a claim for unjust enrichment, even in the alternative.  (Doc. 19 at 11.)  The Court disagrees.

To bring a claim for unjust enrichment in Montana, the plaintiff must plead: (1) that a benefit was conferred on one party by another; (2) that the other had an appreciation or knowledge of the benefit; and (3) that the other's acceptance or

retention of the benefit was under circumstances that "render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Associated Mgmt. Servs. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018).

Under Rule 8, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2); *see also id.* 8(a)(3).  District courts in this circuit have concluded that, although a plaintiff may not recover on both unjust enrichment and breach of contract, Rule 8 allows a plaintiff to claim them in the alternative.  *See, e.g.*, *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1042 (N.D. Cal. 2018); *Becerra v. GM LLC*, 241 F. Supp. 3d 1094, 1117 (S.D. Cal 2017); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015); *Avery v. Barsky*, 2013 WL 1663612, at *5–6 (D. Nev. Apr. 17, 2013); *CLN Props., Inc v. Republic Servs.*, 688 F. Supp. 2d 892, 901–02 (D. Ariz. 2010).

At a later stage of the case, Lindstrom may be required to elect among these claims.  At this point, however, he may plead in the alternative.  *See Rollins*, 338 F. Supp. 3d at 1042.

Accordingly, the Court recommends that Polaris's motion to dismiss Lindstrom's unjust enrichment claim in Count 3 be DENIED.

/ / /

### 3.      Class Action Bar on Consumer Protection Claim

Lindstrom brings a cause of action for violation of the Montana Consumer Protection Act ("MCPA").  Polaris argues, however, that the MCPA bars class actions, and therefore, Lindstrom's MCPA claim must be dismissed from this class action complaint.  (Doc. 17 at 37.)  In response, Plaintiffs point to cases where this Court has reached a contrary conclusion, and argues that these cases were correctly decided.  (Doc. 18 at 34.)  The Court agrees.

The relevant provision of the MCPA provides: "[A] consumer who suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103[5] may bring an individual action *but not a class action* under the rules of civil procedure" in the state district court.  Mont. Code Ann. § 30-14-133 (emphasis added).

Class actions in federal court, however, are governed by Rule 23 of the Federal Rules of Civil Procedure.  *B.K. v. Snyder*, 922 F.3d 957, 966 (9th Cir. 2019).  Rule 23 provides that "[a] class action may be maintained" if the requirements of the Rule are satisfied.  Fed. R. Civ. P. 23(b)(2).

/ / /

---

[5] This section of the MCPA states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code. Ann. § 30-14-103.

The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts."  Fed. R. Civ. P. 1. Thus, when a situation is covered by one of the Federal Rules, the district court must apply that Rule.  *United States v. Orr Water Ditch Co.*, 391 F.3d 1077, 1082 (9th Cir. 2004) (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).  In an action based on diversity jurisdiction, where a state rule conflicts with the Federal Rules, "federal courts are to apply state substantive law and federal procedural law."  *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1086 (S.D. Cal. 2017) (quoting *Hanna*, 380 U.S. at 465).

Polaris argues that the MCPA class action bar in § 30-14-133 is substantive in nature, and therefore, controls in this diversity action.  This Court has consistently held, however, that "[t]he MCPA class action prohibition remains procedural in nature and . . . Rule 23 applies to determine whether a claim may be brought as a class action."  *Wittman v. CB1, Inc.*, 2016 WL 3093427, at *6 (D. Mont. June 1, 2016).  *See Nelson*, 2023 WL 2610769 at *10 (Judge Morris affirming that "*Wittman* remains applicable here"); *Cross v. Allied Waste Servs. of N. Am., LLC*, 2023 WL 1778885, at *4 (D. Mont. Jan. 12, 2023) (Judge Haddon concluding that "Rule 23 preempts the state law MCPA prohibition on class action

/ / /

/ / /

lawsuits"); *Hill v. LLR, Inc.*, 2019 WL 6114237, at *3 (D. Mont. Nov. 18, 2019) (Judge Morris affirming that "*Wittman* remains good law").[6]

The Court is persuaded by the reasoning of these decisions and is unpersuaded by Polaris's arguments to the contrary.  Accordingly, the Court recommends that Polaris's motion to dismiss Lindstrom's putative MCPA class action claim in Count 6 be DENIED.

## III.   CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Polaris's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 16) be GRANTED as to all claims brought by Daigle and Tautenhahn; GRANTED, without prejudice and with leave to amend, as to Lindstrom's claim for breach of contract in Count 1; and DENIED in all other respects.

---

[6] Polaris insists that these decisions were the result of the Court erroneously rejecting Justice Stevens' concurring opinion in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), rather than recognizing it as the controlling opinion in that case.  (Docs. 17 at 44; 19 at 16.) The Court has already addressed this issue, however, and determined that "even if the Ninth Circuit determined Justice Stevens' concurrence to be the controlling opinion, the court's application of that opinion could still result in a finding that Rule 23 preempts the MCPA class action bar."  *Hill v. LLR, Inc.*, 2019 WL 5190983, at *2 (D. Mont. Oct. 9, 2019), *findings and recommendation adopted*, 2019 WL 6114237 (D. Mont. Nov. 18, 2019).  In addition, although the Ninth Circuit has never directly addressed whether Rule 23 preempts the MCPA's class action bar, the court has cited to *Shady Grove* for the proposition that "if a proposed class meets Rule 23's criteria, state law cannot prohibit certification." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 565 (9th Cir. 2019) (en banc).

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.  D. Mont. L.R. 72.3.

DATED this 9th day of August, 2024.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge