IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

JOHN H. LINDSTROM, on behalf of
himself and others similarly situated,

Plaintiff,

vs.

POLARIS INC., POLARIS
INDUSTRIES INC. and POLARIS
SALES INC.,

Defendants.

CV 23-137-BLG-SPW

ORDER ON MAGISTRATE'S
FINDINGS AND
RECOMMENDATIONS

Before the Court is United States Magistrate Judge Timothy Cavan's Findings
and Recommendations, filed August 9, 2024. (Doc. 21). Judge Cavan recommends
this Court grant in part and deny in part Defendant Polaris Inc., Polaris Industries,
and Polaris Sales Inc.'s ("Polaris") Motion to Dismiss (Doc. 16).

Polaris timely filed an objection disagreeing with Judge Cavan's application
of the prudential mootness doctrine, his finding that Polaris failed to meet its burden
when raising its limited-damages warranty defense, and his application of the law
under *Shady Grove Orthopedic Ass'n., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).
(Doc. 23). Plaintiffs timely filed a response rebutting each of Polaris's arguments.
(Doc. 24).

1

For the following reasons, the Court adopts Judge Cavan's Findings and Recommendations in full.

## I.    Legal Standard

### A.    *Findings and Recommendations*

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to will be reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citation omitted).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* Objections are not "a vehicle for the

2

losing party to relitigate its case." *Hagberg v. Astrue*, CV-09-01-BLG, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (citation omitted).

### B.    Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim.  "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Bare legal conclusions or recitations of the elements are not enough. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

3

## II.    Statement of the Facts

Defendants do not object to Judge Cavan's statement of the facts of the case. As a result, the Court adopts the facts set out by Judge Cavan and restates the pertinent facts here.

Plaintiffs purchased a new Polaris RZR 200 vehicle, for use by their children and grandchildren.  (Doc. 13 at 2, 4).  In 2023, Plaintiffs received a "Stop Ride" notice from Polaris, informing them that the RZR 200 vehicles may experience a steering rack failure during operation.  (*Id.* at 6–7).  Polaris subsequently submitted a proposed recall plan to the Consumer Product Safety Commission ("CPSC"), whereby Polaris proposed to (1) replace the original rack and pinion steering system with a new system, (2) provide a six-month limited extended warranty, and (3) upon completion of the repair, provide a $250 voucher for Polaris parts, garments, and accessories.  (*Id.* at 8).

Plaintiffs noted that RZR 200 vehicles are usable by children in a limited age-based timeframe—from ages 10 to 14 years—and because repairs will not be completed for several months, they allege the recall has caused a diminution in the value of each customer's vehicle due to ongoing loss of use.  (*Id.* at 14).  Plaintiffs further allege that much of the damages cannot be resolved through repairs because of Polaris's failure to provide those repairs within a reasonable time, and because of

the incidental and consequential damages Plaintiffs have already suffered "due to Polaris's improper conduct." (*Id.* at 25-26).

On November 15, 2023, Plaintiffs brought this action as a class allegation pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). (Doc. 1 at 7). Based on the foregoing, Plaintiff's pled causes of action for breach of contract (Count 1), breach of implied warranty of merchantability (Count 2), unjust enrichment (Count 3), breach of express warranty (Count 4), negligent misrepresentation (Count 5), and violations of state consumer protection statutes (Count 6). Defendants filed motions to dismiss under Rule 12(b)(6). (Doc. 16). Polaris argued that Plaintiffs' complaint should be dismissed in its entirety under the doctrine of prudential mootness and alternatively that several of Plaintiffs' causes of action should be dismissed because they fail to state a claim upon which relief can be granted. (Doc. 17 at 11-12).

## III. Discussion

Polaris filed the following objections to Judge Cavan's Findings and Recommendation:

(1) Judge Cavan incorrectly determined that the prudential mootness doctrine did not apply based on the CPSC supervised recall;

(2) Judge Cavan incorrectly determined that Polaris failed to meet their burden in raising their limited-damages warranty defense; and

(3) Judge Cavan incorrectly found that under *Shady Grove*, Rule 23 preempts the state law Montana Consumer Protection Act ("MCPA") prohibition on class action lawsuits.

(Doc. 23). The Court will address each of these objections in turn.

A.    *Prudential Mootness Doctrine*

Polaris objected to Judge Cavan's determination that Plaintiff's diminution-in-value claim was not prudentially moot. (Doc. 23 at 2). "The doctrine of prudential mootness permits a court to dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief." *Deutsche Bank Nat'l. Trust Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014). But courts "are not required to dismiss a live controversy as moot merely because it may become moot in the near future." *Hunt v. Imperial Merch. Servs., Inc*, 560 F.3d 1137, 1142 (9th Cir. 2009). Rather, "[t]he party raising a mootness challenge . . . carries the heavy burden of showing that the court can grant no effective relief." *In re Macbook Keyboard Litig.*, 2019 WL 6465285, at *7 (N.D. Cal. Dec. 2, 2019) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)) (internal quotation marks omitted).

Judge Cavan found that Plaintiff's claims for diminution-in-value damages were not prudentially moot because it is a type of relief not provided for by the CPSC recall. (Doc. 21 at 21–23). In their objections to Judge Cavan's findings, Polaris

asserts that "the recall repair precludes any claim for diminution-in-value damages," and states in an accompanying footnote that "the Magistrate Judge did not address this prong of Polaris's argument."   (Doc. 23 at 6). In the Findings and Recommendation, the diminution-in-value damages are included under loss-of-use damages.[1] Judge Cavan held that "this action seeks to hold Polaris accountable for other injuries for which the recall would not provide relief, including damages for loss of use." (Doc. 21 at 6, 21–22).  Polaris's argument mirrors the argument they made in their original motion to dismiss and, therefore, will be reviewed under the clear error standard.

As Judge Cavan noted, the district court's reasoning in *Sater v. Chrysler Group LLC* is persuasive. EDCV 14-00700, 2014 WL 11412674 (C.D. Cal. Oct. 7, 2014).  In *Sater*, Plaintiff's brought a class action alleging that "Chrysler knew there was a problem with tie rods on the Class Vehicles, but continued to sell the trucks as if the defect did not exist." *Id.* at *2.  Chrysler moved to dismiss the complaint on prudential mootness grounds because they had already initiated a voluntary nationwide recall supervised by the National Highway Traffic Safety Administration ("NHTSA") that would make the relief sought by Sater moot. *Id.*  The district court

---

[1] "Plaintiffs note that RZR 200 vehicles are usable by children in a limited age-based timeframe—from ages 10 to 14 years—and because repairs will not be completed for several months, they allege the recall has caused a diminution in the value of each customer's vehicle due to ongoing loss of use." (Doc. 21 at 6).

7

declined to apply the prudential mootness doctrine despite the ongoing recall overseen by the NHTSA. *Id.* at *5. The NHTSA recall would replace the defective tie rod ball studs at issue or reimburse owners for out-of-pocket fixes to the defective parts. *Id.* However, the court found that the recall did not provide relief for the excessive tire wear, loss of use, and diminution of resale value. *Id.* Therefore, Sater's claims were not prudentially moot. *Id.*

Under the CPSC supervised recall, Polaris will replace the RZR 200's defective steering system, grant owners a six-month extended warranty, and provide a $250 voucher for purchasing other Polaris products. (Doc. 21 at 21). However, like *Sater*, the Plaintiffs' action seeks to hold Polaris accountable for other alleged injuries for which the recall would not provide relief, including damages for loss-of-use, deceptive business practices, and other unreimbursed costs. (*Id.* at 21–22). Therefore dismissing the case as prudentially moot would leave Plaintiff's "without complete relief". *Sater,* 2014 WL 11412674 at *5.

The Court finds that Judge Cavan did not commit clear error in finding that Plaintiff's claims were not prudentially moot. Accordingly, the Court adopts Judge Cavan's recommendations regarding prudential mootness.

### B.   Limited-Damages Warranty Provision

Next, Judge Cavan determined that Polaris failed to meet its burden in raising the limited-warranty defense. Judge Cavan found that Polaris failed: (1) to cite any

8

cases; (2) articulate how the warranty provision applies to each type of damages Plaintiffs seek; (3) explain how Montana Code Annotated § 30-2-719(3) applies to the warranty provision; or (4) make clear whether Polaris' position is that the warranty provision is dispositive as to prudential mootness or other grounds for dismissal. (Doc. 21 at 23). Without more, Polaris' argument does little to advance the Court's analysis of the issue. (*Id.*)

In their objection to the Findings and Recommendations, Polaris argued that the terms of the warranty were unambiguous and their straightforward application to Plaintiff's damages did not require extensive briefing. (Doc. 23 at 3). Polaris reiterated that § 30-2-719(3) was relevant because it provides that "consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable" and that introducing case law that makes the same point was unnecessary. (*Id.* at 5). Polaris's objections do not provide any additional legal authority to support the fact that they met their legal burden. Therefore, this Court will review Judge Cavan's finding under the clear error standard.

Objections are not a vehicle for the losing party to relitigate its case. *Hagberg*, 2009 WL 3386595, at *1. Polaris dedicated a scant three sentences to this argument

9

in their motion to dismiss.[2] Though extensive briefing might not have been required, Polaris still failed to cite any cases or legal authority supporting their position or identify how the warranty applied to the specific damages sought by Plaintiffs. (Doc. 17 at 27). In their objections, Polaris failed to identify how they met their legal burden in the original motion to dismiss. (Doc. 23 at 5-6).

The Court finds that Judge Cavan did not commit clear error when determining Polaris failed to meet their legal burden. Accordingly, the Court adopts Judge Cavan's recommendations regarding Polaris's limited warranty provision.

### C.    MCPA Class Action Prohibition Under Shady Grove

Last, Polaris objected to Judge Cavan's determination that the MCPA class prohibition was procedural under *Shady Grove*, and therefore, Rule 23 should be applied in federal court. (Doc. 23 at 6–7). In *Shady Grove,* the Supreme Court considered whether a New York state law (N.Y. C.P.L.R. § 901(b)) prohibiting class actions precluded a federal district court sitting in diversity from hearing a class

---

[2] "Polaris's written limited warranty…provides that "POLARIS SHALL HAVE NO LIABILITY TO ANY PERSON FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY DESCRIPTION, WHETHER ARISING OUT OF EXPRESS OR IMPLIED WARRANTY OR ANY OTHER CONTRACT, NEGLIGENCE, OR OTHER TORT OR OTHERWISE." Exs. 2L, 2M, 2N at 155. This exclusion is enforceable under the UCC as enacted in Montana and Texas. *See* Mont. Code Ann. § 30-2-719(3); Tex. Bus. & Com. Code Ann. § 2.719(3).8. Accordingly, Plaintiffs cannot recover loss-of-use damages or any other consequential or special damages." (Doc. 17 at 27)

action under Rule 23. 559 U.S. 396. By a five to four vote, the Court found that New York could not bar the class action at issue; four justices joined Justice Scalia's plurality opinion. *Id.* at 395–96. Justice Stevens joined Scalia's decision in part to affirm that Rule 23 "must apply in this case" but diverged from Scalia regarding the general question on whether a federal procedural rule should always trump a state procedural rule. *Id.* at 416.

> 1.    *Justice Scalia's Plurality Opinion*

Under Justice Scalia's plurality opinion, there is a two-step framework to determine if a federal or state rule controls in a federal diversity action. The first step is determining whether the federal rule answers the question in dispute. *Id.* at 398 (citing *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4-5 (1987). Under the second step, if the federal rule answers the question in dispute, it will govern "unless it exceeds the statutory authorization or Congress's rulemaking power. *Id.* (citing *Burlington*, 480 U.S. at 5.)

In *Shady Grove,* the question in dispute was whether Shady Grove's suit could proceed as a class action. *Id.* Under N.Y. C.P.L.R. § 901(b), a class action cannot be maintained unless statutory authorization exists. Under Rule 23, a class action may be maintained if: (1) the suit satisfies the criteria set forth in Rule 23(a) (i.e., numerosity, commonality, typicality, and adequacy of representation); and (2) the suit fits into one of the three categories described in Rule 23(b). *Id.* Justice Scalia

11

found that § 901(b) and Rule 23 answered the same question because they both determine whether a class action may proceed for a given suit. *Id.* at 401.

Under step two of Justice Scalia's framework, the question is whether the Federal Rule complies with the Rules Enabling Act ("R.E.A.") (28 U.S.C.A. § 2072). *Id.* at 406–07. Under the R.E.A., the Supreme Court has the power to prescribe general rules of practice and procedure for cases in the United States district courts as long as the rule does not abridge, enlarge, or modify any substantive right. 28 U.S.C.A. § 2072(a)–(b). The Supreme Court has long held that the limitation under the R.E.A. means the rule must "really regulat[e] procedure —the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Shady Grove*, 559 U.S. at 407 (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). "What matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* (citing *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946). Applying this test, the Supreme Court has rejected every statutory challenge to a federal rule they reviewed. *Id.* Justice Scalia found that each rule challenged under the R.E.A. had "some practical effect on the parties' rights, but each undeniably

12

regulated only the process for enforcing those rights; none altered the rights." *Id.* at 407–08.

Applying this criterion, Justice Scalia determined that rules allowing multiple claims, such as the joinder of claims (FRCP 18), the joinder of parties (FRCP 20), and the consolidation of actions (FRCP 42), are valid under the R.E.A. because these rules do not change "plaintiffs' separate entitlements to relief nor abridge defendants' rights." *Id.* at 408. "For the same reason, Rule 23...as it allows willing plaintiffs to join their separate claims against the same defendants in a class action falls within §2072(b)'s authorization." *Id.*

### 2.    *Justice Stevens Concurrence*

In *Shady Grove,* Justice Stevens applied a different two-step framework to reach the same conclusion as Justice Scalia. First, the court must determine whether the scope of the federal rule is broad enough to control the issue, thereby leaving no room for the operation of conflicting state law. *Id.* at 421 (Stevens, J. concurring). If the federal rule is broad enough that there is a "direct collision" between the state and federal rules, courts must then determine if the federal rule is a valid exercise of the rulemaking authority authorized via the R.E.A. *Id.* (Stevens, J. concurring) (citing *Burlington,* 480 U.S. at 5). Under this second step, a federal rule cannot govern a case when it would displace a state law that is procedural in nature "but is

so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J. concurring).

Applying this framework to Rule 23, Justice Stevens first determined that Rule 23 is in direct collision with § 901(b) because Rule 23 "squarely govern[s] the determination [of] whether the court" should certify a class action. *Id.* at 429–30. Moving to step two of the framework, Justice Stevens explained that the bar for finding an Enabling Act problem is high, and the mere possibility that a federal procedural rule would alter a state-created right is insufficient. *Id.* at 432. In viewing the legislative history of § 901 Justice Stevens determined that its purpose is a "classically procedural" statute that makes it easier to litigate claims in New York courts. *Id.* at 435. Justice Stevens compared § 901 to other procedural rules that set filing fees or deadlines for briefs. *Id.* In conclusion, Justice Stevens found that Rule 23 controls when federal jurisdiction is based on diversity in New York.

### 3.    *Shady Grove Application in the Ninth Circuit*

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977). "The standard requires that the narrowest opinion is actually the 'logical subset of other, broader opinions', such that it 'embod[ies] a position implicitly approved by at least

14

five Justices who support the judgment.'" *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991).

The Ninth Circuit has yet to address what opinion from *Shady Grove* is controlling. *Wittman v. CBI*, No. CV 15-105-BLG, 2016 WL 3093427 at *5 (D. Mont. June 1, 2016). Ninth Circuit courts have taken various positions regarding the *Shady Grove* decision. District courts nation-wide have viewed the concurring opinion in *Shady Grove* as the narrowest grounds and thus the controlling approach,[3] while others have continued to apply pre-*Shady Grove* approaches.[4] *Id.*

*Wittman* was the first case to address the conflict between the MCPA class action prohibition and Rule 23. 2016 WL 3093427. There, Chief Judge Morris "look[ed] only to the part of Justice Scalia's opinion in which five Justices joined and the pre-*Shady Grove* approach in the Ninth Circuit, to determine whether application of a federal rule violates the Rules Enabling Act. *Wittman*, 2016 WL

---

[3] *See e.g., Friedman v. Dollar Thrifty Auto. Group, Inc.*, 2015 WL 8479746 (D.Colo. Dec. 10, 2015); *In re Target Corp. Data Sec. Breach Litig.*, 66 F.Supp.3d 1154 (D.Minn.2014); *Phillips v. Philip Morris Companies Inc.*, 290 F.R.D. 476 (N.D.Ohio 2013); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. July 18, 2011); *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8–9 (C.D.Cal. May 12, 2011); *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642 (E.D.Mich. March 11, 2011); *In re Wellbutrin XL Antitrust Litig.*, 756 F.Supp.2d 670 (E.D.Pa. Dec. 22, 2010); *Bearden v. Honeywell Intern. Inc.*, 2010 WL 3239285 (M.D.Tenn. Aug. 16, 2010).
[4] *See e.g., Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours and Co.*, 2015 WL 4755335, at *21 (N.D.Cal. Aug. 11, 2015); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 299 F.R.D. 648, 653 (S.D.Cal.2014); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *20 (N.D.Cal. Oct. 2, 2014).

3093427 at *6.  Using this approach the court found that the MCPA class action prohibition only alters the procedural means by which a remedy may be pursued.  *Id.* According to the court, the class action prohibition does not add, subtract, or define any of the necessary elements of the claim.  *Id.*  Based on these conclusions, the court found that Rule 23 applies to determine if a class action may proceed when federal courts sit in diversity jurisdiction.  *Id.*  In *Hill v. LLR, Inc.*, and *Nelson v. Forest River, Inc.*, Chief Judge Morris again addressed the conflict between the MCPA and Rule 23 and found that his decision in *Wittman* remains applicable until the Ninth Circuit adopts a contrary approach. No. CV-18-120-GF, 2019 WL 2404900 (D. Mont. Mar. 8, 2019); No. CV-22-49, 2023 WL 2610769 (D. Mont. Mar. 23, 2023).

In *Routh v. Travelers Casualty Ins.*, this Court considered the conflict between Rule 42(b) and Mont. Code Ann. § 33-18-242(6)(a), two statutes that govern bifurcation. No. CV 17-42-BLG, 2017 WL 4074026 (D. Mont. Sept. 14, 2017). This Court elected to adopt Justice Stevens' concurrence as the controlling opinion.  *Id.* at *1.  Finding that his concurrence controls because it concurred in judgement on the narrowest grounds.  *Id.* (*see Marks v. United States,* 430 U.S. 188, 193 (1977)). Similarly, in *Otto v. Newfield Exploration Co.*, this Court considered the conflict between Rule 15(a)(2) and North Dakota Code Annotated § 32-03.2-11, two rules that govern the amendment of pleadings. No. CV 15-66-BLG, 2017 WL 7391526

16

(D. Mont. Dec. 21, 2016).   Again, this Court adopted the Justice Stevens' concurrence as the controlling opinion. *Id.* at *2.

In his Findings and Recommendations, Judge Cavan found that the MCPA class action bar is procedural in nature and therefore, Rule 23 controls in a federal diversity action.   (Doc. 21 at 32).   Judge Cavan found that "this Court has consistently held…that 'the MCPA class action prohibition remains procedural in nature and…Rule 23 applies to determine whether a claim may be brought as a class action." *Id.* (citing *Wittman v. CB1, Inc.*, 2016 WL 3093427, at *6 (D. Mont. June 1, 2016)).

In their objections, Polaris first argues that Judge Cavan ignored this Court's previous holding that Justice Stevens' concurrence is controlling in *Routh* and *Otto*. (Doc. 23 at 7). Second, they assert that Judge Cavan erroneously relied on the *Wittman* line of cases, and if he had applied Justice Stevens' concurrence, he would have concluded that the MCPA class action bar is substantive in nature. (*Id.* at 7-8). This Court will review Judge Cavan's findings on this issue de novo.

Given the two different approaches used by Montana federal district courts, this Court must determine which to follow when evaluating conflicts between state and federal law.   Many courts, including this Court, have found Justice Stevens' opinion to be controlling based on *Marks v. United States*, which held that "the holding of the [Supreme] Court may be viewed as that position taken by those

17

Members who concurred in the judgment on the narrowest grounds." 430 U.S. at 193. However, the *Marks* standard should only be used when "an opinion can be meaningfully regarded as narrower than another and can represent a common denominator of the Court's reasoning." *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (quoting *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1140 (9th Cir. 2005). Under this standard, "the narrowest opinion is actually the "logical subset of another, broader opinion," such that it "embod[ies] a position implicitly approved by at least five Justices who support the judgement." *Id.* (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991)).

Provided the 4-1-4 split in *Shady Grove,* it is unclear which opinion represents a common denominator of the Court. However, it seems unlikely that Justice Stevens' approach embodies a position implicitly approved by the majority of justices. Justice Scalia found that Justice Stevens accepted the first step of his two-step test, namely, "determining whether the federal and state rules can be reconciled (because they answer different questions)." *Shady Grove,* 559 U.S. at 411. But Justice Scalia makes it clear that Justice Stevens' departure concerning the second part of the test is not reconcilable with the plurality's opinion because his "analysis squarely conflicts with *Sibbach*, which established the rule we apply." *Id.* Under *Sibbach* the central inquiry for the second step of the framework is whether the Federal Rule "really regulates procedure." *Id.* (quoting Sibbach, 312 U.S. at 14).

18

Scalia concluded, "*Sibbach* has been settled law...for nearly several decades...Why we should cast aside our decades-old decision escapes us." *Shady Grove*, 559 U.S. 414.

Justice Scalia's plurality opinion makes it clear that Justice Stevens' concurrence cannot be considered the logical subset of the broader plurality opinion. The only section of the opinion that a majority of Justices agreed on is the first step of the framework. This aligns with Chief Judge Morris's determination that "the part of Justice Scalia's opinion in which five Justices joined and the pre-*Shady Grove* approach in the Ninth Circuit, [controls] to determine whether a federal rule violates the Rule Enabling Act". *Wittman* at 2016 WL 3093427, at *6. Accordingly this Court adopts Chief Judge Morris's approach in *Wittman*.

Under this approach, "Rule 23 affects only the process of enforcing the litigant's rights." *Id.; Nelson*, 2023 WL 2610769 at *9. MCPA's prohibition of class action alters only the procedural means by which a remedy can be pursued. *Id; Hill*, 2019 WL 519083 at *2; *Nelson*, 2023 WL 2610769 at *9. "The class action prohibition itself does not add, subtract, or define any of the necessary elements of the claim. *Id.; Hill*, 2019 WL 519083 at *2; *Nelson*, 2023 2023 WL 2610769 at *9. Since the MCPA class prohibition remains procedural in nature, Rule 23 applies to determine whether a claim may be brought as a class action. Accordingly, this Court

adopts Judge Cavan's finding that Polaris' motion to dismiss Plaintiff's MCPA putative class action claim be denied.

**D. Conclusion**

IT IS SO ORDERED that Judge Cavan's Findings and Recommendations (Doc. 23) are ADOPTED in full.

IT IS FURTHER ORDERED that Polaris's Motion to Dismiss (Doc. 16) is DENIED IN PART to dismiss the claims of Plaintiff Lindstrom based on: (1) prudential mootness grounds; (2) Polaris's limited-warranty provision; and (3) the MCPA class action prohibition; and GRANTED IN PART to dismiss the claims of Plaintiff Daigle and Tautenhahn based on a lack of personal jurisdiction.

DATED this _24th_ day of September, 2024.

SUSAN P. WATTERS
United States District Judge

20